**Appeal No. 13-55553**

_____

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

_____

**NAME.SPACE, INC.,**

*Plaintiff-Appellant,*

v.

**INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS,**

*Defendant-Appellee.*

_____

**On Appeal From The United States District Court**
**For The Central District Of California**
**The Honorable Percy Anderson**
**Case No. 2:12-cv-08676-PA-PLA**

_____

**APPELLEE'S ANSWERING BRIEF**

Jeffrey A. LeVee (125863)
Eric P. Enson (204447)
Kathleen P. Wallace (234949)
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA  90071.2300
Telephone: +1.213.489.3939
Facsimile:  +1.213.243.2539
E-mail:     jlevee@JonesDay.com

Attorneys for Defendant-Appellee
INTERNET CORPORATION FOR
ASSIGNED NAMES AND NUMBERS

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee Internet Corporation for Assigned Names and Numbers ("ICANN") makes the following disclosures:  ICANN is a California not-for-profit public benefit corporation.  ICANN has no parent corporation, and no publicly held corporation holds 10% or more of ICANN's stock.

Dated:  November 8, 2013       Respectfully submitted,

                                        Jones Day


                                        By:   /s/ Jeffrey A. LeVee
                                          Jeffrey A. LeVee
                                          Eric P. Enson
                                          Kathleen P. Wallace

                                        Attorneys for Defendant-Appellee
                                        INTERNET CORPORATION FOR
                                        ASSIGNED NAMES AND
                                        NUMBERS

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ............................1

II.    COUNTERSTATEMENT OF JURISDICTION ...........................................4

III.   COUNTERSTATEMENT OF ISSUES ........................................................4

IV.   COUNTERSTATEMENT OF FACTS ........................................................5

V.    COUNTERSTATEMENT OF THE CASE .................................................10

VI.   STANDARD OF REVIEW........................................................................14

VII.  ARGUMENT...........................................................................................15

      A.    The District Court Correctly Ruled That Name.space Has Not Alleged Facts Plausibly Supporting A Violation Of Section 1 Of The Sherman Act Or The Cartwright Act....................................15

           1.    The District Court Correctly Found That Name.space Has Failed To Allege Facts Sufficient To Establish The Existence Of An Unlawful Conspiracy ..................................16

                 (a)   Name.space has not sufficiently alleged a conspiracy between ICANN and its Board Members ....................................................................18

                 (b)   Name.space has not sufficiently alleged a "capture" of ICANN's decision making.......................21

                 (c)   Name.space has not sufficiently alleged a conspiracy between ICANN and other industry members..............................................................26

           2.    The District Court Correctly Found That The Alleged Conspiracy Is Not Plausible.....................................27

      B.    The District Court Correctly Dismissed Name.space's Monopolization Claim........................................................................29

           1.    ICANN Is Incapable Of Monopolizing The "TLD Registry Market"..................................................................30

           2.    Name.space Has Not Alleged Monopolization Of Any Other Market................................................................34

           3.    ICANN Has Not Engaged In Exclusionary Conduct .............36

i

# TABLE OF CONTENTS
## (continued)

**Page**

C.  The District Court Correctly Found That Name.space Has Not Suffered An Antitrust Injury ................................................................39

D.  The District Court Correctly Dismissed Name.space's Trademark Claims ........................................................................44

E.  The District Court Correctly Dismissed Name.space's Tortious Interference Claims ....................................................................51

    1.  Name.space's Claim For Tortious Interference With Contract Was Properly Dismissed ..........................................51

    2.  Name.space's Claim For Tortious Interference with Prospective Economic Advantage Was Properly Dismissed ....................................................................................54

F.  The District Court Correctly Dismissed Name.space's UCL Claim ....................................................................................55

VIII.  CONCLUSION..........................................................................57

# TABLE OF AUTHORITIES

**Page**

### CASES

*Aguilar v. Atl. Richfield Co.*,
    25 Cal. 4th 826 (2001) ....................................................................56

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
    948 F.2d 536 (9th Cir. 1991) .................................................36, 38

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group LP*,
    592 F.3d 991 (9th Cir. 2010) ...............................................29

*Am. Soc'y of Mech. Eng'rs v. Hydrolevel Corp.*,
    456 U.S. 556 (1982)...................................................23, 24, 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................15

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990)..........................................................39, 43

*Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*,
    603 F. Supp. 1077 (S.D. Ind. 1985).................................32

*Beck v. Am. Health Grp., Int'l, Inc.*,
    211 Cal. App. 3d 1555 (1989) .........................................51

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................passim

*Bosley Med. Inst., Inc. v. Kremer*,
    403 F.3d 672 (9th Cir. 2005) ...........................................44

*Bova v. City of Medford*,
    564 F.3d 1093 (9th Cir. 2009) .........................................44

*Brantley v. NBC Universal, Inc.*,
    675 F.3d 1192 (9th Cir. 2012) ..................................39, 41

## TABLE OF AUTHORITIES
### (continued)

Page

*Brusnon Commc'ns, Inc. v. Arbitron, Inc.*,
   239 F. Supp. 2d 550 (E.D. Pa. 2002) ................................................. 28

*Cargill, Inc. v. Monfort of Colorado, Inc*.,
   479 U.S. 104 (1986) ............................................................................. 43

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ................................................................... 55, 56

*Chavez v. Whirlpool Corp*.,
   93 Cal. App. 4th 363 (2001) ............................................................... 56

*Cnty. Of Tuolumne v. Sonora Cmty. Hosp.*,
   236 F.3d 1148 (9th Cir. 2001) ............................................................ 16

*Coal. For ICANN Transparency v. Verisign, Inc.*,
   611 F.3d 495 (9th Cir. 2009) ........................................................ 22, 23

*Conte v. Jakks Pac., Inc.*,
   No. 12-cv-00006 LJOSA, 2012 WL 6115632
   (E.D. Cal. Dec. 10, 2012) ............................................................. 52, 53

*Cook v. Brewer*,
   637 F.3d 1002 (9th Cir. 2011) ............................................................ 14

*Copperweld Corp. v. Independence Tube, Corp.*,
   467 U.S. 752 (1984) ....................................................................... 27, 28

*Credit Chequers Info. Servs. v. CBA, Inc.*,
   No. 98-CIV-3868 (RPP),1999 WL 253600
   (S.D.N.Y. Apr. 29, 1999) ................................................................... 36

*Curry v. Steve's Franchise Co. Inc*.,
   No. 84-1363-MA, 1984 WL 1468 (D. Mass. Nov. 21, 1984) ............ 27

*Discon, Inc. v. NYNEX Corp*.
   93 F.3d 1055, 1061-62 (2d Cir. 1996) ............................................... 32

iv

## TABLE OF AUTHORITIES
### (continued)

Page

*Eagle v. Star-Kist Foods, Inc.*,
812 F.2d 538 (9th Cir. 1987) ................................................................35

*ECOS Electronics Corp. v. Underwriters Labs.*,
743 F.2d 498 (7th Cir. 1984) ...............................................................43

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
525 F.3d 822 (9th Cir. 2008) ...............................................................51

*Glenn Holly Entm't., Inc. v. Tektronic Inc.*,
352 F.3d 367 (9th Cir. 2003) ...............................................................35

*Goldstein v. Bank of Am., N.A.*,
No. 1:09-cv-329, 2010 WL 1252641
(W.D.N.C. Jan. 19, 2010) ...................................................................28

*GoPets Ltd. v. Hise*,
657 F.3d 1024 (9th Cir. 2011) .............................................................48

*Haag v. Countrywide Bank*,
F.S.B., No. 2:11-cv-00923-GMN-CWH, 2012 WL 1831872
(D. Nev. May 18, 2012) .......................................................................53

*Halicki v. United Artists Commc'ns, Inc.*,
812 F.2d 1213 (9th Cir. 1987) .............................................................46

*High Tek USA, Inc. v. Heat Control, Inc.*,
12-cv-00805 YGR, 2012 WL 2979051
(N.D. Cal. July 18, 2012)......................................................................42

*Image Online Design, Inc. v. Internet Corp. for Assigned Names &*
*Numbers*, No. 12-cv-08968 DDP, 2013 WL 489899
(C.D. Cal. Feb. 7, 2013)........................................................................50

*In re Baby Food Antitrust Litig.*,
166 F.3d 112 (3d Cir. 1999) ................................................................20

*In re Citric Acid Litig.*,
996 F. Supp. 951 (N.D. Cal. 1998).....................................................20

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re Late Fee & Over-Limit Fee Litig.*,
 528 F. Supp. 2d 953 (N.D. Cal. 2007) ..................................................20

*In re Tobacco II Cases*,
 46 Cal. 4th 298 (2009) ..........................................................................57

*Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*,
 No. cv-07-0043 MMM(SSX), 2007 WL 4976364
 (C.D. Cal. Oct. 29, 2007) ......................................................................22

*Jack Russell Terrier Network of Northern Cal. v. Am. Kennel Club, Inc.*,
 407 F.3d 1027 (9th Cir. 2005) ...............................................................28

*JM Computer Servs., Inc. v. Schlumberger Techs., Inc.*,
 No. c-95-20349 JM, 1996 WL 241607
 (N.D. Cal. May 3, 1996) ..................................................................18, 26

*Kendall v. Visa U.S.A., Inc.*,
 518 F.3d 1042 (9th Cir. 2008) ....................................................16, 18, 26

*Korea Supply Co. v. Lockheed Martin Corp.*,
 29 Cal. 4th 1134 (2003) .........................................................................54

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
 884 F.2d 504 (9th Cir. 1989) ............................................................41, 42

*Levi Strauss & Co. v. Shilon*,
 121 F.3d 1309 (9th Cir. 1997) ...............................................................47

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
 194 F.3d 980 (9th Cir. 1999) .................................................................50

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
 985 F. Supp. 949 (C.D. Cal. 1997) ..................................................47, 48

*Lombard's, Inc. v. Prince Mfg., Inc.*,
 753 F.2d 974 (11th Cir. 1985) .........................................................18, 26

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Lucas v. Citizens Commc'ns Co.*,
  244 F. App'x 774 (9th Cir. 2007) ........................................31

*Manwin Licensing Int'l S.A.R.L, et al. v. ICM Registry, LLC, et al.*,
  No. CV 11-9514 PSG JCGX, 2012 WL 3962566
  (C.D. Cal. August 14, 2012) .........................................42, 43

*Marin Cnty. Bd. of Realtors, Inc. v. Palsson*,
  16 Cal. 3d 920 (1976) ...................................................16

*McCullough v. Zimmer, Inc.*,
  382 F. App'x 225 (3d Cir. 2010) .......................................35

*McGlinchy v. Shell Chem. Co.*,
  845 F.2d 802 (9th Cir. 1988) ..........................................41

*Mercy-Peninsula Ambulance, Inc. v. Cnty. Of San Mateo*,
  791 F.2d 755 (9th Cir. 1986) .......................................30, 31

*Michaluk v. Vohra Health Servs., P.A.*,
  No. CIV S-12-1162 KJM, 2012 WL 3993940
  (E.D. Cal. Sept. 11, 2012) ..............................................53

*Millennium Labs., Inc. v. Ameritox, Ltd.*,
  No. 12CV1063-MMA (JMA), 2012 U.S. Dist. LEXIS 147528
  (S.D. Cal. Oct. 12, 2012) ...............................................47

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984).....................................................16

*Nova Wines, Inc. v. Adler Fels Winery LLC*,
  467 F. Supp. 2d 965 (N.D. Cal. 2006)..................................47

*NTN Commc'ns, Inc. v. Interactive Network, Inc.*,
  No. C 94-20777 RMW (ENE), 1995 U.S. Dist. LEXIS 20322
  (N.D. Cal. Aug. 17, 1995)...............................................45

*Official Airline Guides, Inc. v. F.T.C.*,
  630 F.2d 920 (2d Cir. 1980) ...........................................33

# TABLE OF AUTHORITIES
## (continued)

Page

*Olde Monmouth Stock Transfer Co. v. Depository Trust & Clearing Corp.*,
485 F. Supp. 2d 387 (S.D.N.Y. 2007) .......................................................33, 34

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*,
555 U.S. 438 (2009).................................................................................38

*Paladin Assocs., Inc. v. Montana Power Co.*,
328 F.3d 1145 (9th Cir. 2003) .................................................................42

*Papasan v. Allain*,
478 U.S. 265 (1986)..................................................................................15

*Pardi v. Kaiser Found. Hosps.*,
389 F.3d 840 (9th Cir. 2004) ....................................................................54

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) ....................................................................50

*Pink Supply Corp. v. Hiebert, Inc.*,
788 F.2d 1313 (8th Cir. 1986) ..................................................................25

*Portney v. CIBA Vision Corp.*,
593 F. Supp. 2d 1120 (C.D. Cal. 2008) ....................................................30

*POURfect Prods. v. KitchenAid*,
No. CV-09-2660 PHXGMS, 2010 WL 1769413,
(D. Ariz. May 3, 2010) .............................................................................33

*Prime Healthcare Servs., Inc. v. Service Employees Int'l Union*,
No. 11-cv-02652 JLS RBB, 2012 WL 3778348
(S.D. Cal. Aug. 30, 2012) .........................................................................27

*Public Utility Dist. No. 1 of Grays Harbor County Washington v.*
*IDACORP Inc.*,
379 F.3d 641 (9th Cir. 2004) ....................................................................14

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
124 F.3d 430 (3d Cir. 1997) ................................................................34, 35

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Reno v. ACLU*,
 521 U.S. 844 (1997)............................................................5

*Sambreel Holdings LLC v. Facebook, Inc.*,
 906 F. Supp. 2d 1070 (S.D. Cal. 2012)......................................43, 42

*SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.*,
 48 F.3d 39 (1st Cir. 1995)..................................................35

*SC Manufactured Homes, Inc. v. Liebert*,
 162 Cal. App. 4th 68 (2008) ..............................................55

*Semi-Materials Co., Ltd. v. SunPods, Inc.*,
 No. 11-cv-06719-LHK, 2012 WL 3962487
 (N.D. Cal. Sept. 10, 2012) ...............................................53, 54

*Smith v. State Farm Mut. Auto. Ins. Co.*,
 93 Cal. App. 4th 700 (2001) ..............................................56

*Sociedad Anonima Vina Santa Rita v. U.S. Dep't of the Treasury*,
 193 F. Supp. 2d 6 (D.D.C. 2001)..........................................47, 48

*Spanish Broad. Sys. v. Clear Channel Commc'ns, Inc.*,
 376 F.3d 1065 (11th Cir. 2004) ...........................................32

*Standfacts Credit Servs. v. Experian Info. Solutions, Inc.*,
 294 Fed. App'x 271 (9th Cir. 2008) ......................................36

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*,
 809 F.2d 626 (9th Cir. 1987) .............................................18, 26

*Transphase Sys., Inc. v. S. Cal. Edison Co.*,
 839 F. Supp. 711 (C.D. Cal. 1993) .......................................30

*TruePosition, Inc. v. LM Ericsson Tel. Co.*,
 899 F. Supp. 2d 356 (E.D. Pa. 2012).....................................25

*United States v. Aluminum Co. of Am.*,
 148 F.2d 416 (2d Cir. 1945) .............................................36

# TABLE OF AUTHORITIES
## (continued)

Page

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966).............................................................29, 37

*United States v. Kama*,
    394 F.3d 1236 (9th Cir. 2005) .......................................................56

*United States v. Taubman*,
    297 F.3d 161 (2nd Cir. 2002) ........................................................20

*Universal Grading Serv. v. eBay, Inc.*,
    No. C-09-2755 RMW, 2012 WL 70644
    (N.D. Cal. Jan. 9, 2012) .................................................................30

*Verisign, Inc. v. Internet Corp. for Assigned Names and*
    *Numbers*, No. CV 04-1292 (CTX), 2004 WL 1945561
    (C.D. Cal. May 18, 2004) ...............................................................42

*Verisign, Inc. v. Internet Corp. for Assigned Names and*
    *Numbers*, No. CV 04-1292 AHM, 2004 WL 2095696
    (C.D. Cal. Aug. 26, 2004).........................................21, 22, 23, 25

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)....................................................................29, 38

*Viewtech, Inc. v. United States*,
    653 F.3d 1102 (9th Cir. 2011) .......................................................14

*White v. Rockingham Radiologists, Ltd.*,
    820 F.2d 98 (4th Cir. 1987) ...........................................................32

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
    588 F.3d 659 (9th Cir. 2009) .........................................................19

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998) ..........................................................34

## STATUTES

15 U.S.C. § 1 ...................................................................................passim

## TABLE OF AUTHORITIES
### (continued)

Page

15 U.S.C. § 2 ..................................................................................passim

15 U.S.C. § 1125(a) ....................................................................5, 45, 47

15 U.S.C. § 1127 ...................................................................................45

28 U.S.C. § 1331 .....................................................................................4

28 U.S.C. § 1332 .....................................................................................4

28 U.S.C. § 1367(a) ................................................................................4

Cal. Bus. & Prof. Code § 16720 ...........................................................15

Cal. Bus. & Prof. Code § 17200 .....................................................55, 13

I.R.C. § 501(c)(3) ....................................................................................8

### OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(1)....................................................................11, 14

Fed. R. Civ. P. 12(b)(6)....................................................................11, 14

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

In 1998, through agreements with the U.S. government, Defendant-Appellee Internet Corporation for Assigned Names and Numbers ("ICANN") was granted the exclusive authority to coordinate the Internet's Domain Name System ("DNS"). The DNS associates user-friendly domain names (e.g., www.uscourts.gov) with the numeric network addresses (e.g., 170.110.225.155) required to deliver information on the Internet, making the Internet easier to navigate. These agreements with the U.S. government also bestow on ICANN the responsibility for approving new top level domains ("TLDs") and recommending that they be delegated into the DNS to supplement the existing TLDs such as .COM, .NET and .ORG. Only TLDs connected to the DNS's "master root zone" are accessible to the vast majority of Internet users. Because of its unique role with respect to the DNS and its not-for-profit status, ICANN's Bylaws expressly forbid it from competing with the companies that it authorizes to operate TLDs.

Since 1996, Plaintiff-Appellant name.space, Inc. ("name.space") has allegedly operated an "alternate root zone" containing numerous TLDs that are not connected to the DNS. Name.space's TLDs are allegedly based on generic words such as .art, .book, .home and .sucks, and can only be accessed through the installation of special software that permits a connection with name.space's alternate root zone.

ICANN is now beginning to approve hundreds of new TLD Operators that will operate one or more new TLDs within the DNS.  Concerned about having to compete with these new TLDs, name.space brought this action charging ICANN with various antitrust, trademark, tortious interference and unfair competition claims, and seeking to block the introduction of any new TLD in the DNS that consists of the same word strings that name.space offers in its alternate root zone.

The district court dismissed each of name.space's claims.  The district court's order was well founded, as every one of name.space's claims falls short of established pleading standards.

*First*, name.space's antitrust claims are deficient.  The conspiracy claims fail because name.space does not allege any facts plausibly suggesting the existence of a conspiracy, its members or its terms, and thus falls well short of this Court's requirement that conspiracy allegations answer the basic questions of  "who, did what, to whom (or with whom), where, and when."  Name.space also alleges that ICANN is a monopolist in the TLD registry market, but this claim fails because: (i) ICANN does not compete in the alleged "TLD registry market" and is thus legally incapable of monopolizing that market; and (ii) ICANN has not engaged in any exclusionary conduct.  Furthermore, name.space has failed to allege an "antitrust injury" sufficient to support either of its antitrust claims, particularly in

light of the fact that name.space's real complaint is that there will be ***more*** competition as a result of ICANN's approval of new TLDs.

*Second*, name.space's claim that it possesses trademark rights in the TLDs it operates in its alternate root zone and that ICANN has violated these rights is not actionable because name.space has failed to (and cannot) allege that ICANN has "used" name.space's alleged trademarks in commerce as required to state Lanham Act and common law infringement claims.  As there has been no use of name.space's alleged trademarks – by ICANN or any other party – there is no case or controversy to adjudicate.

*Third*, name.space's interference claims are deficient because name.space has not identified a single contract or relationship that has been breached or disrupted by ICANN's acceptance of applications for new TLDs.  Nor has name.space alleged facts plausibly suggesting that ICANN took steps intentionally "designed" to induce breach or to disrupt name.space's business relationships.

*Finally*, name.space's unfair competition claim against ICANN is dependent on, and thus must fall with, name.space's other causes of action.

The district court's order granting ICANN's motion to dismiss name.space's Complaint should be affirmed in its entirety.

## II.    COUNTERSTATEMENT OF JURISDICTION

The district court had original subject matter jurisdiction over name.space's federal antitrust claims pursuant to 28 U.S.C. § 1331, as well as diversity jurisdiction under 28 U.S.C. § 1332.  The district court also had supplemental jurisdiction over name.space's corresponding state law claims pursuant to 28 U.S.C. § 1367(a).

Whether the district court had subject matter jurisdiction over name.space's Lanham Act, trademark infringement, and unfair competition claims is one of the issues disputed on appeal.  ICANN's position is that the district court did not have subject matter jurisdiction over these claims because name.space has not alleged facts sufficient to establish a justiciable case or controversy.

ICANN accepts the balance of name.space's statement of jurisdiction.

## III.    COUNTERSTATEMENT OF ISSUES

1.    Do name.space's conspiracy allegations under Section 1 of the Sherman Act satisfy the requirement that name.space allege facts sufficient to establish "who, did what, to whom (or with whom), where, and when?"

2.    Does name.space adequately allege that ICANN has unlawfully acquired or maintained monopoly power in the TLD registry market sufficient to support a claim under Section 2 of the Sherman Act?

3.      Does name.space adequately allege antitrust injury, namely injury to competition beyond the impact on name.space itself, sufficient to support either of its antitrust claims?

4.      Does name.space allege sufficient facts to establish a justiciable case or controversy with respect to its claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), for common law trademark infringement or for common law unfair competition?

5.      Does name.space adequately allege any intentional action undertaken by ICANN designed to disrupt the relationship name.space allegedly has with its clients, and does name.space allege sufficient facts of actual disruption and resulting economic harm sufficient to support the tortious interference claims?

6.      Does name.space allege sufficient facts to supply the required "unlawful" business practices to state a claim under California's Unfair Competition Law?

## IV.    COUNTERSTATEMENT OF FACTS

**The Internet's Domain Name System** – The Internet has been described as "an international network of interconnected computers." *Reno v. ACLU*, 521 U.S. 844, 849 (1997). Each computer and server has a unique identity, known as an Internet Protocol address ("IP address"). An IP address consists of a series of numbers. (Plaintiff-Appellants' Excerpts of Record ("ER") at 21, ¶ 20.) Because

those numbers can be difficult to remember, the founders of the Internet created the Domain Name System ("DNS"), which converts numeric IP addresses into more easily-remembered domain names that permit users to find specific websites, such as "icann.org" or "uscourts.gov." (*Id.* ¶ 21.) When a computer user requests a domain name associated with a particular website, that request is sent to a DNS server, which looks up the IP address assigned to that domain name and permits a connection between the requesting computer and the website. (*Id.* ¶ 22.) The end result is that this Court's website, for example, can be found at "www.ca9.uscourts.gov," rather than through entry of a string of numbers, which is how computers on the network actually know it.

The ".ORG" and ".GOV" referenced in these examples are known as "Top Level Domains" or "TLDs." (ER at 22, ¶ 23.) The letters immediately to the left of the last "period" or "dot" are known as the Second Level Domain, such as "icann" or "uscourts." (*Id.*) The letters to the left of the Second Level Domain (if any) are known as the Third Level Domain, such as the "ca9" used in this Court's website address. (*Id.*)

There exists "generic" TLDs, or "gTLDs," which may be "sponsored" or "unsponsored." (ER at 23, ¶ 29.) "Unsponsored" gTLDs are operated for the entire Internet community and include .COM, .NET and .ORG. By contrast, "sponsored" gTLDs, such as .MUSEUM, are operated for the benefit of a defined

6

community.  (*Id.*)  In addition, there are "country-code" TLDs, or "ccTLDs," such as .UK, which are operated by or on behalf of sovereign nations.  (*Id.*)  Name.space alleges that there are 22 gTLDs and approximately 250 ccTLDs currently resolving in the DNS.  (*Id.*)

**ICANN's Mandate and Operations** – ICANN is a California not-for-profit public benefit corporation.  (ER at 21, ¶ 19.)  Prior to ICANN's formation in 1998, the United States government, via contractual arrangements with third parties, administered the DNS.  (ER at 25, ¶ 35.)  ICANN was formed in 1998 as part of the U.S. Government's commitment to privatize the Internet so that administration of the DNS would be in the hands of those that actually use the Internet as opposed to governments.  (*Id.* at ¶ 36.)  ICANN signed its first agreement with the Department of Commerce (DOC) in 1998.  (*Id.*)  Since that time, ICANN has signed subsequent agreements with the DOC that have lead to ICANN's exclusive authority and responsibility for coordinating the DNS and ensuring its continued security, stability and integrity.  (*Id.* at ¶¶ 36-37.)

ICANN fulfills its coordination role in a number of ways.  For example, ICANN enters into contracts with and monitors each TLD "registry," the companies that operate the TLDs.  (*Id.* at ¶ 37.)  In addition, ICANN accredits "registrars," which are the companies that contract with consumers and businesses

7

to obtain rights to use second-level domain names in the TLDs, such as yahoo.com and NPR.org.  (ER at 22, ¶ 27.)

Pursuant to its agreements with the U.S. government, as name.space alleges, "ICANN has the exclusive authority to determine whether to introduce new TLDs into the Internet's current architecture."  (ER at 25, ¶ 37.)  "ICANN also has the exclusive authority to determine what companies will operate as registries for these TLDs."  (*Id*.)  ICANN is required to perform these functions "exclusively for charitable, educational, and scientific purposes within the meaning of § 501(c)(3) of the Internal Revenue Code of 1986 . . . ."  (Defendant-Appellee's Supplemental Excerpts of Record ("SER") at 009, ICANN's Articles of Incorporation ("Articles") at art. 3.)  In addition, ICANN must act "through open and transparent processes that enable competition and open entry in Internet-related markets." (SER at 009, Articles at art. 4.)  Although ICANN contracts with entities that operate within the DNS, ICANN does not "compete" in the DNS, and its Bylaws specifically restrict it from acting as a registry or registrar in competition with the entities affected by ICANN's policies:

> ICANN shall not act as a Domain Name System Registry
>
> or Registrar or Internet Protocol Address Registry in
>
> competition with entities affected by the policies of
>
> ICANN.  Nothing in this Section is intended to prevent

ICANN from taking whatever steps are necessary to

protect the operational stability of the Internet in the

event of financial failure of a Registry or Registrar or

other emergency.

(SER at 014, ICANN's Bylaws ("Bylaws") at art. II, § 2.)

**Name.space's Operations –** In 1996, name.space began operating TLDs

that were not (nor ever have been) linked in any way to the DNS. Instead,

name.space's TLDs resolve in – and are connected to – name.space's "alternate

root zone." (ER at 24-25, ¶¶ 32-34.) Because name.space's system is not part of

the DNS, computers that access the Internet cannot ordinarily reach the websites

that resolve in name.space's alternate root zone. To overcome this, users can

install special software on their computers that permit those computers to bypass

the DNS and access the websites on name.space's alternate root zone. (*Id.* at ¶¶

33-34.)

**ICANN's Expansion of the TLDs Operating Within the DNS –** One of

ICANN's core missions is to create competition within the DNS. (SER at 009,

Articles at art. 4; SER at 014, Bylaws at art. I, § 2.6.) In furtherance of this

mission, in 2000, ICANN accepted applications to add a limited number of new

TLDs in the DNS. (ER at 27, ¶¶ 45-48.) On October 6, 2000, name.space

submitted an application to ICANN to operate 118 TLDs ("2000 Application").

9

(ER at 28, ¶ 50.)  ICANN approved seven new TLDs in 2000 but did not select any of the TLDs that name.space requested.  (*Id*. at ¶¶ 53-55.)

In 2004, ICANN accepted applications for sponsored gTLDs.  Name.space did not apply.  In 2012, ICANN opened another round of applications for new TLDs (the "2012 Application Round").  (ER at 30, ¶ 62.)  In connection with the 2012 Application Round, ICANN published a comprehensive guidebook and required an application fee of $185,000 for each gTLD requested.  (ER at 30-31, ¶¶ 64, 67.)  As set forth in the guidebook, ICANN offered a one-time $86,000 reduction in the application fee for applicants that had applied in the 2000 round but whose TLDs were not selected.  (ER at 32, ¶ 70.)  Again, name.space did not apply.  (*Id*.)  But numerous other entities did apply, requesting over fourteen hundred new TLDs; some of those applications propose to operate TLDs that contain exactly the same letter strings as some of the TLDs name.space is using in its alternate root zone.  (ER at 36, ¶¶ 87-88.)

## V.    COUNTERSTATEMENT OF THE CASE

**Name.space's Claims Against ICANN –** Name.space filed its Complaint on October 10, 2012.  In its Complaint, name.space asserts antitrust, trademark, tortious interference and unfair competition claims against ICANN.  First, name.space asserts that ICANN has violated federal and California antitrust laws by agreeing with unspecified co-conspirators to structure the 2012 Application

Round in a way that excludes name.space from launching in the DNS the TLDs that it sought in its 2000 Application. (ER at 38, 40, ¶¶ 97, 98, 116.) Name.space also asserts that ICANN has monopolized the "TLD registry market" and prevented name.space from competing in this market. (ER at 39-40, ¶¶ 109-113.) Name.space then claims that it has statutory and common law trademark rights in the TLDs it applied for in 2000, and that ICANN has violated these rights by permitting "competing TLD registries" to apply for identical TLDs in the 2012 Application Round. (ER at 41, 43, 46, ¶¶ 123-24, 136, 154.) Name.space closes its Complaint by alleging that ICANN has engaged in unfair competition and tortiously interfered with name.space's business by accepting applications from "competing TLD registries" for TLDs name.space sought in its 2000 Application. (ER at 44-46, 47-49, ¶¶ 145-147, 160-63, 167-170.)

**The District Court's Order Granting ICANN's Motion to Dismiss –**

ICANN timely filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). On March 4, 2013, the district court granted ICANN's motion to dismiss in its entirety. The district court dismissed each of name.space's claims on the following grounds:

- <u>Conspiracy Claims</u>: The district court concluded "that Plaintiff has not alleged sufficient evidentiary facts in support of its antitrust conspiracy claims to satisfy the *Twombly* standard," in part because

11

name.space "has also not alleged sufficient facts explaining who it believes participated in the conspiracy, and what the alleged co-conspirators actually agreed to do in violation of the antitrust laws." (ER at 9-10.) The district court also found that the alleged conspiracy was not plausible because name.space has not alleged facts sufficient to establish that ICANN's alleged conduct has restrained trade. (ER at 10.)

- Monopolization Claim: The district court concluded, "whatever monopoly power ICANN may possess was 'thrust upon' it as a result of 'historic accident' rather than the result of 'willful acquisition.'" (ER at 10.) The district court also found that name.space "fails to allege sufficient facts to establish an antitrust injury. Plaintiff's allegation that ICANN's 2012 Application Round application fee was too high, without more, does not support a monopolization claim." (ER at 11.)

- Trademark and Common Law Unfair Competition Claims: The district court found that name.space only alleged that ICANN "intends to delegate" certain gTLDs, which would allegedly violate name.space's trademark rights. Because delegation has not yet occurred, the district court concluded that name.space "has not alleged

sufficient facts to establish a justiciable case or controversy." (ER at 11-12.)

- <u>Tortious Interference Claims</u>: The district court dismissed name.space's claims for tortious interference with contract and prospective economic advantage because "the Complaint fails to allege any intentional actions undertaken by ICANN 'designed to disrupt' the relationship Plaintiff has with its clients or evidentiary facts of actual disruption and resulting economic harm." (ER at 12-13.)

- <u>UCL Claim</u>: The district court found that name.space's claim under California's Unfair Competition Law "relies on the Complaint's claims for antitrust violations and trademark infringement to supply the required 'unlawful' business practices to state a claim. Because the Court has concluded that those claims allege insufficient facts to state viable claims, Plaintiff's section 17200 claim necessarily fails." (ER at 13.)

The district court dismissed name.space's Sherman Act Section 2 monopolization claim with prejudice. The court dismissed the remaining claims without prejudice and gave name.space 18 days to amend its Complaint. Name.space elected to appeal rather than to amend.

## VI.    STANDARD OF REVIEW

The standard of appellate review of the district court's order granting ICANN's motion to dismiss is *de novo* review.  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) ("We review *de novo* a district court's order granting a motion to dismiss under Rule 12(b)(6)."); *Viewtech, Inc. v. United States*, 653 F.3d 1102, 1103-04 (9th Cir. 2011) ("We review the district court's grant of a motion to dismiss under Rule 12(b)(1) *de novo*.").  A dismissal for failure to state a claim may be affirmed by the Court on any basis supported in the record.  *Public Utility Dist. No. 1 of Grays Harbor County Washington v. IDACORP Inc.*, 379 F.3d 641, 646 (9th Cir. 2004) (citing *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001)).

To survive a motion to dismiss, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*").  A complaint cannot rely on mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*.  Instead, the elements of each claim must be alleged in more than vague and conclusory terms:  a complaint must contain enough "heft" to "'sho[w] that the pleader is entitled to relief.'"  *Id*. at 557.  Put another way, a plaintiff must plead facts sufficient to "nudge[]" its allegations across the "line between possibility and plausibility."  *Id*. at 557, 570.

14

In determining whether a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face," *id*. at 570, a court is not bound by conclusory allegations, unwarranted inferences, or legal conclusions, even if "couched as…factual allegation[s]." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (No weight is given to "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.").

The Supreme Court has "counsel[ed]" lower courts "against sending the parties into discovery when there is no reasonable likelihood that the plaintiff[] can construct a claim from the events related in the complaint." *Twombly*, 550 U.S. at 558 (internal quotation omitted).  This admonition is particularly apt here, as set forth below.

## VII.   ARGUMENT

### A.   The District Court Correctly Ruled That Name.space Has Not Alleged Facts Plausibly Supporting A Violation Of Section 1 Of The Sherman Act Or The Cartwright Act.

In its First and Third Claims for Relief, name.space asserts that ICANN engaged in a conspiracy to structure the 2012 Application Round in a manner that would block name.space from entering the TLD registry market.  (ER at 38, 40, ¶¶ 97, 116.)[1]  Name.space's Complaint, however, does not allege facts sufficient to

---

[1] Name.space brings its conspiracy claims under Section 1 of the Sherman Act and California's Cartwright Act.  15 U.S.C. § 1; Cal. Bus. & Prof. Code

establish the existence of such a conspiracy.  To the contrary, the few facts alleged

in the Complaint demonstrate that the alleged conspiracy is not plausible.

> **1.    The District Court Correctly Found That Name.space Has Failed To Allege Facts Sufficient To Establish The Existence Of An Unlawful Conspiracy.**

The Supreme Court has defined an antitrust "conspiracy" as a "meeting of

the minds" or a "'conscious commitment'" between separate economic actors "'to

a common scheme designed to achieve an unlawful objective.'"  *Monsanto Co. v.*

*Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (citations omitted); *Twombly*,

550 U.S. at 557.  In the Ninth Circuit, "to allege an agreement between antitrust

co-conspirators, the complaint must allege facts such as a 'specific time, place, or

person involved in the alleged conspiracies' to give a defendant seeking to respond

to allegations of a conspiracy an idea of where to begin."  *Kendall v. Visa U.S.A.,*

*Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 565

n.10).  Put another way, the complaint must "answer the basic questions:  who, did

what, to whom (or with whom), where, and when?"  *Kendall*, 518 F.3d at 1048.

---

(continued…)

§ 16720.  But the analysis of name.space's Cartwright Act claim "mirrors the analysis under" Section 1 because the Cartwright Act "was modeled after the Sherman Act."  *Cnty. Of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001); *Marin Cnty. Bd. of Realtors, Inc. v. Palsson*, 16 Cal. 3d 920, 925 (1976).

In dismissing name.space's Complaint, the district court found that name.space failed to answer these "basic questions." (ER at 10.) Specifically, the district court concluded that name.space has "not alleged sufficient facts explaining who it believes participated in the conspiracy, and what the alleged co-conspirators actually agreed to do in violation of the antitrust laws." (*Id.*)

The district court's conclusion was well founded. The Complaint and name.space's opening brief are devoid of factual allegations regarding the participants, terms and confines of the claimed conspiracy. Instead, name.space's opening brief – like its Complaint – vacillates between three conspiracy theories: (1) that ICANN Board Members conspired with ICANN; (2) that ICANN Board members "captured" ICANN's decision-making process; and (3) that some unidentified group within ICANN conspired with other "industry members." *Compare* Opening Br. at 26 ("ICANN entered into a conspiracy with current and former board members"); *with id.* ("specific current and former members of ICANN's board of directors conspired with each other and other named industry players"); *with id.* at 27 ("other industry members, not just board members, participated in the conspiracy"); *with id.* at 20 (describing the "who" element of the conspiracy to be "named current and former ICANN board members, as well as TLD registries"). As set forth below, the district court correctly concluded that none of these conspiracy theories was adequately pled.

### (a)    Name.space has not sufficiently alleged a conspiracy between ICANN and its Board Members.

With respect to its first conspiracy theory, name.space has not pled facts sufficient to support the conclusion that ICANN entered into a conspiracy with its current or former Board Members.  The Complaint alleges only that four current and former ICANN Board Members allegedly have (or had) economic interests in the TLD registry market that conflicted with their duties to ICANN.  (ER at 29-30, ¶ 61.)  But name.space does not identify a single ICANN employee who allegedly formed an unlawful agreement with these (or any other) Board Members, which – as this Court has previously held – is a sufficient basis to uphold the district court's ruling.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 633 (9th Cir. 1987) ("The first step in a § 1 analysis is to determine the identity of the alleged conspirators and the content of the alleged conspiracy."); *Kendall*, 518 F.3d at 1048 (complaint must "answer the basic questions:  who, did what, to whom (or with whom), where, and when?"); *Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985) (dismissing complaint where "specific participants of the conspiracy are not even identified"); *JM Computer Servs., Inc. v. Schlumberger Techs., Inc*., No. c-95-20349 JM, 1996 WL 241607, at *3 (N.D. Cal. May 3, 1996) ("... Plaintiff has failed to identify the other participant(s) in the agreement or conspiracy which Plaintiff claims violates § 1 [of the Sherman Act]. This is sufficient basis for dismissing Plaintiff's § 1 claims.").

18

Nor does the Complaint offer facts specifying what the Board Members and the unidentified ICANN employee(s) agreed to do. Put another way, name.space has not alleged any facts describing the terms of the alleged agreement, what discussions led to the alleged agreement, whether the alleged agreement was written or oral, explicit or tacit, or the manner in which the alleged agreement was carried out. In fact, the Complaint fails to identify *even one* decision, vote or action taken by the four named individuals on any topic, much less conduct pursuant to a conspiracy directed at name.space. (*See* ER at 10 ("the Court notes that Plaintiff has also not alleged sufficient facts explaining … what the alleged co-conspirators actually agreed to do in violation of the antitrust laws").) This too – as this Court recently found – is a sufficient basis to uphold the district court's ruling. *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 669 (9th Cir. 2009) (affirming dismissal of Section 1 claims because the complaint "does not clearly assert which individual agreement or agreements constitute" the unlawful conspiracy.)

Name.space's Complaint also fails to allege facts plausibly suggesting where and when the alleged conspiracy took place. All name.space alleges is that nine regularly scheduled ICANN Board meetings took place over the course of less than two years. (ER at 30-31, ¶ 66.) While this may demonstrate an *opportunity* to conspire, it does not support the inference of an antitrust conspiracy because the

19

Board would be meeting whether or not some of its members were engaged in

conspiratorial conduct. *See In re Citric Acid Litig.*, 996 F. Supp. 951, 959 (N.D.

Cal. 1998) (defendant's meetings with conspirators were insufficient to prove it

agreed to fix prices; "Where cooperation is necessary for a legitimate business

purpose, the mere opportunity to conspire at business meetings is insufficient to

support an inference of conspiracy."); *see also United States v. Taubman*, 297 F.3d

161, 166 (2nd Cir. 2002) (prosecution's closing argument "suggest[ed] that

knowledge of and participation in an antitrust conspiracy can be inferred merely

from the fact of meetings between persons engaged in competing businesses,

which is not the law.").[2]

  In short, name.space merely pleads that four former or current ICANN

Board Members had or have conflicts of interest. ***But a conflict of interest is not a***

***conspiracy***. As other courts have found, alleged "conspiratorial motivation," like

that offered by name.space, can be consistent with independent conduct and

therefore does not support an inference of conspiracy. *In re Baby Food Antitrust*

*Litig.*, 166 F.3d 112, 133 (3d Cir. 1999); *In re Late Fee & Over-Limit Fee Litig.*,

528 F. Supp. 2d 953, 963-64 (N.D. Cal. 2007) (noting that *Twombly* rejected

---

[2] Moreover, name.space does not provide any facts that would explain how
the purported conspiracy between the ICANN Board Members and the unidentified
ICANN employee(s) caused the market as a whole to become less competitive.
This is yet another reason to uphold the district court's finding on name.space's
Section 1 claim. (ER at 10 (finding that name.space failed to alleged evidentiary
facts suggesting that the conspiracy "actually injured competition").)

allegations of motive and opportunity to conspire, and that "other courts have

consistently refused to infer the existence of a conspiracy from these kinds of

averments"). Name.space jumps to a conclusion of conspiracy based on alleged

conflicts of interest, but name.space fails to allege facts identifying who was part

of the alleged conspiracy, how it was formed, what was agreed to or when. The

Complaint thus contains only the type of legal conclusion that *Twombly* instructs is

not entitled to a presumption of truth. *Twombly*, 550 U.S. at 555.[3]

> **(b)      Name.space has not sufficiently alleged a "capture" of ICANN's decision making.**

With respect to name.space's second conspiracy theory, name.space appears

to postulate that the four former and current Board Members have conspired (either

among themselves or with others) to capture ICANN's decision-making process.

Name.space's Complaint, however, does not allege facts sufficient to support such

a "capture" theory. Particularly instructive in this regard is the decision in

*Verisign, Inc. v. Internet Corp. for Assigned Names and Numbers*, No. CV 04-1292

---

[3] To the extent name.space now posits that the amount of the application fee was the subject of the conspiracy, the district court correctly found that "the Complaint simply does not allege facts that state a plausible antitrust conspiracy claim based on the price of an application for the 2012 Application Round to satisfy the *Twombly* standard," in part because the Complaint "makes clear [that] ICANN received at least 189 applications for gTLDs that have appeared on Plaintiff's alternative Internet, plus an unknown number of other applications for other gTLDs." (ER at 9-10 (citing *Coal. For ICANN Transparency v. Verisign, Inc.*, 611 F.3d 495, 502 (9th Cir. 2009) (noting that "a high price alone is not an antitrust violation")).)

AHM, 2004 WL 2095696 (C.D. Cal. Aug. 26, 2004), where the court rejected a similar claim brought against ICANN.

In *Verisign*, Verisign, Inc., the operator of the .COM and .NET gTLDs, claimed that competing TLD operators who were members of various ICANN advisory groups conspired with ICANN to restrict the services that Verisign was permitted to offer. *Id*. at *2. Given ICANN's unique "'bottom-up' policy development process that considers or even solicits input from advisory groups," *id*. at *5, the district court found that "in order to sufficiently plead a conspiracy, [Verisign] must allege that ICANN's decision-making process was *controlled* by economic competitors who have conspired to injure Verisign." *Id*. (emphasis added). From there, the court dismissed Verisign's claim with prejudice because Verisign failed to allege facts demonstrating that the ICANN Board had been "captured" by the alleged conspirators. *Id*. at *5-8 (there was "no allegation (much less factual support for one) that the Board of ICANN actually conspired with any of Verisign's competitors," and there were "[no] specific facts to support [Verisign's] theory that the Board complied with the conspirators' alleged attempt to 'hamstring' Verisign"). The court concluded that participation by the alleged competitors in ICANN decision-making "is not enough to give rise to antitrust liability; *control* is required." *Id*. at *5 (emphasis in original); *see also Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, No. cv-07-0043 MMM(SSX),

2007 WL 4976364, at *7 n.51 (C.D. Cal. Oct. 29, 2007) (organizations that permit input from competitors do not violate the antitrust laws unless "coopted by one or more members of the industry in an anti-competitive way").

Name.space's capture theory fails for the same reasons articulated in *Verisign*. All name.space has alleged is that certain current and former ICANN Board Members with alleged commercial interests in the TLD registry market participated in creating the application process for the 2012 Application Round. (ER at 30, ¶ 65.) As in *Verisign*, name.space has failed to allege any facts suggesting that the current and former Board Members conspired with one another (or anyone else) to take "control" of the ICANN Board in order to injure name.space or that the ICANN Board somehow acquiesced in the conspirators' attempts to "hamstring" name.space. *See Verisign, Inc.*, 2004 WL 2095696, at *5-8. Further, the Complaint does not contain a single allegation that any member of the ICANN Board ever even discussed name.space in conjunction with decisions made about the 2012 Application Round.

The authority that name.space cites does not support its capture theory. Name.space relies principally on *Am. Soc'y of Mech. Eng'rs v. Hydrolevel Corp.*, 456 U.S. 556 (1982), but *Hydrolevel*, which illustrates the sort of control that must exist to state a conspiracy claim under a capture theory, actually supports ICANN's position. There, a manufacturer of low-water fuel cutoffs for boilers brought an

antitrust action against a non-profit trade association (the ASME) that promulgated codes and standards for the industry. An employee of the plaintiff's competitor served on the ASME committee that prepared the standards for boilers, and he allegedly conspired with the committee chairman to prepare an "unofficial communication" on ASME letterhead suggesting that the plaintiff's product failed to satisfy the ASME's code governing low-water fuel cutoffs. *Id*. at 560-61. This interpretation, which the ASME approved without verifying its accuracy, was disseminated to potential customers, thereby discouraging the purchase of the plaintiff's product. *Id*. at 562. The Supreme Court found that the competitor "successfully used its position with [the ASME] . . . to thwart [the plaintiff's] competitive challenge," and imposed agency liability on the ASME under Section 1 of the Sherman Act. *Id*.

The factual scenario present in *Hydrolevel* is a far cry from that alleged here. Here, there are no facts supporting a claim that the four current or former ICANN Board Members conspired with one another to infiltrate the ICANN Board in order to subvert the decision-making process of the Board regarding the 2012 Application Round. Likewise, there is no allegation that these four individuals (of which only three are voting Board members) comprised a majority of the Board (which has sixteen voting members), or that they somehow captured the process for determining the rules and procedures for the 2012 Application Round by

24

outvoting the other members of the ICANN Board. *Cf. Verisign*, 2004 WL 2095696, at *7 ("unlike what is alleged here, [in *Hydrolevel*,] the defendant-association's subcommittee was clearly 'captured' by the plaintiff's competitor whose vice-president manipulated the association into approving and circulating the terribly injurious attack on plaintiff's product"). Nor are there any allegations that the co-conspirators managed to convince the Board – a Board that also includes individuals not commercially interested in the TLD registry market – to injure name.space. Absent these allegations, name.space has failed to allege that ICANN's current or former Board Members conspired to capture ICANN's decision making.[4]

_____

[4] *Hydrolevel* is also distinguishable because it addressed the narrow issue of whether, and under what circumstances, a private standard-setting organization can be liable for the anticompetitive actions of its members under the agency doctrine of apparent authority. *Id*. at 565-66; *see also Verisign*, 2004 WL 2095696, at *7 ("*Hydrolevel* is really about the appropriate instruction for the derivative liability of an employer for antitrust violations committed by its employees."). Here, unlike in *Hydrolevel*, name.space is not pursuing a theory of agency liability against ICANN. Instead, name.space alleges – albeit inadequately and in a conclusory fashion – that ICANN was an active participant in the alleged conspiracy. *Pink Supply Corp. v. Hiebert, Inc*., 788 F.2d 1313 (8th Cir. 1986), cited by name.space, also addressed the doctrine of apparent authority and is therefore likewise distinguishable.

Name.space also cites *TruePosition, Inc. v. LM Ericsson Tel. Co*., 899 F. Supp. 2d 356 (E.D. Pa. 2012), but *TruePosition* is likewise inapposite. There, the alleged conspiracy was successful because of the co-conspirators' "positions of power as Chairmen within key [] subcommittees." *Id*. at 364. Here, there is no allegation that the four current or former Board Members enjoyed "positions of power" with respect to determining how the 2012 Application Round would be structured.

**(c)    Name.space has not sufficiently alleged a conspiracy between ICANN and other industry members.**

With respect to name.space's third conspiracy theory, name.space fails to allege a factual basis to support its conclusion that ICANN entered into a conspiracy with third parties.  In fact, all name.space offers – in one throw-away paragraph – is a conclusion that ICANN conspired with "Verisign, Afilias and the select few other companies that operate as TLD registries."  (ER at 37, ¶ 95; *see also* Opening Br. at 27 ("other industry members, not just board members, participated in the conspiracy").)  But just as name.space failed to identify any ICANN employee who participated in this alleged conspiracy, name.space likewise fails to identify any individual at Verisign or Afilias (or any other "industry member") who purportedly participated in the alleged conspiracy.  Without these allegations, there is no basis whatsoever for name.space's conspiracy claims to proceed to discovery.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 633; *Kendall*, 518 F.3d at 1048 *Lombard's, Inc.,* 753 F.2d at 975; *JM Computer Servs., Inc.*, 1996 WL 241607, at *3.[5]

In sum, the Complaint fails to give "sufficient notice of who is alleged to do what activity, when it was supposed to be done and how the activity was to be

---

[5] Name.space cites Paragraph 76 of the Complaint in support of its contention that "other industry members, not just board members, participated in the conspiracy."  (Opening Br. at 27.)  But Paragraph 76 is nothing more than the conclusory allegation that the 2012 Application Round was structured in a way that would benefit "industry insiders" and "industry behemoths."  (ER at 33, ¶ 76.)  It does not identify any participants in the alleged conspiracy.

accomplished." *Prime Healthcare Servs., Inc. v. Service Employees Int'l Union*, No. 11-cv-02652 JLS RBB, 2012 WL 3778348, at *5 (S.D. Cal. Aug. 30, 2012) (internal quotation marks and citation omitted). As a result, the district court's order dismissing the conspiracy claims should be affirmed.

### 2. The District Court Correctly Found That The Alleged Conspiracy Is Not Plausible.

It is name.space's burden to "nudg[e its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Name.space fails to do so for at least two reasons.

First, to the extent name.space is alleging a conspiracy between ICANN and current board members (*i.e.*, individuals who were members of ICANN's Board of Directors at the time the alleged conspiracy was entered into), such a conspiracy is not actionable as a matter of law. As the Supreme Court held in *Copperweld Corp. v. Independence Tube, Corp.*, 467 U.S. 752, 769 (1984),

> officers of a single firm are not separate economic actors pursuing separate economic interests …. [O]fficers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy.

"Simply put, a single corporate entity cannot agree, combine or conspire with its own officers, directors, employees, or its affiliates and subsidiaries to supply the collaborative element of a Sherman Act violation." *Curry v. Steve's Franchise Co.*

*Inc.*, No. 84-1363-MA, 1984 WL 1468, at *5 (D. Mass. Nov. 21, 1984); *Jack Russell Terrier Network of Northern Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035-36 (9th Cir. 2005) (affirming dismissal of Section 1 conspiracy claim under *Copperweld* because plaintiff's claim "only involves activity occurring within a single enterprise").

Second, as name.space alleges, ICANN "has the exclusive authority to determine what companies will operate as registries for these TLDs."  (ER at 25, ¶ 37; *see also* ER at 39, ¶ 109 ("ICANN alone has the power to determine what companies will operate as registries for TLDs…."); *id.* at ¶ 113 (ICANN has "control over access to the Root"); ER at 26, ¶ 38 (noting "ICANN's role as the government-sanctioned gatekeeper to the Internet").)  Thus, ICANN did not have to conspire with anyone to keep name.space out of the TLD registry market.  If that actually had been one of ICANN's objectives, ICANN could do so in its sole discretion without resorting to a shadowy conspiracy.  Name.space's failure to allege any logical reason for ICANN to enter into the alleged conspiracy is yet another basis on which to affirm dismissal of the Complaint.  *Brusnon Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 564 (E.D. Pa. 2002) (dismissing antitrust claims where the plaintiff offered "no logical reason" for the defendant to enter in the alleged conspiracy); *Goldstein v. Bank of Am., N.A.*, No. 1:09-cv-329,

2010 WL 1252641, at *4 (W.D.N.C. Jan. 19, 2010) (dismissing complaint where the defendants' participation in the alleged conspiracy "would make no sense").

### B.    The District Court Correctly Dismissed Name.space's Monopolization Claim.

Name.space's Second Claim for Relief alleges that ICANN has monopolized the "TLD registry market." (ER at 39-40, ¶ 113.) There are three elements of a "successful claim of Section 2 monopolization: (a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal 'antitrust' injury.'" *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group LP*, 592 F.3d 991, 998 (9th Cir. 2010) (quoting *Cal. Computer Prods., Inc. v. Int'l Bus. Mach. Corp.*, 613 F.2d 727, 735 (9th Cir. 1979)). The Supreme Court, in interpreting Section 2 of the Sherman Act, has concluded that the "willful acquisition or maintenance" of monopoly power must be "distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). In other words, "[t]o safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*." *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

Here, the district court correctly concluded that name.space's Section 2 claim fails as a matter of law. ICANN is legally incapable of monopolizing the

alleged "TLD registry market," a market in which it does not compete, and ICANN has not acquired or maintained monopoly power, in any market, through exclusionary conduct.

### 1.    ICANN Is Incapable Of Monopolizing The "TLD Registry Market"

"The gravamen of a section 2 claim is the deliberate use of market power ***by a competitor*** to control price or exclude competition." *Mercy-Peninsula Ambulance, Inc. v. Cnty. Of San Mateo*, 791 F.2d 755, 759 (9th Cir. 1986) (emphasis added). "It is axiomatic in antitrust law that a defendant may not be found liable under the Sherman [A]ct for monopolizing or attempting or conspiring to monopolize a market unless that defendant is a competitor in the relevant market and his conduct creates a dangerous probability that he will gain a dominant share of the market." *Transphase Sys., Inc. v. S. Cal. Edison Co.*, 839 F. Supp. 711, 717 (C.D. Cal. 1993). "Simply put, in order to be liable for inflicting antitrust injury under Section 2, a defendant must compete in the affected market." *Universal Grading Serv. v. eBay, Inc.*, No. C-09-2755 RMW, 2012 WL 70644, at *9 (N.D. Cal. Jan. 9, 2012) (dismissing Section 2 claim where the defendant did not compete in the allegedly monopolized markets); *Portney v. CIBA Vision Corp.*, 593 F. Supp. 2d 1120, 1129 (C.D. Cal. 2008) (finding "no legal authority" for the proposition that the plaintiff could monopolize a market in which the plaintiff "is not a competitor and possesses no market share").

Name.space alleges that ICANN has monopolized the "TLD registry market," but ICANN does not compete in this market, as the Complaint acknowledges.  (ER at 17, 21, 25, ¶¶ 2, 19, 36-37) (alleging only that ICANN has the exclusive authority to determine whether to introduce new TLDs and choose **other entities** to serve as registry operators).)  Indeed, ICANN is forbidden by its Bylaws from operating a TLD registry or competing with the entities that operate such registries.  (SER at 014, Bylaws at art. II, § 2.)

The Ninth Circuit has dismissed similar Section 2 claims where the alleged monopolist did not compete in the relevant market.  In *Mercy-Peninsula*, for example, an ambulance company sued San Mateo county claiming that it monopolized the health care provision market by selecting ambulance companies other than the plaintiff to provide services in the alleged market.  *Mercy-Peninsula*, 791 F.2d at 756.  The Ninth Circuit affirmed dismissal of the Section 2 claim because "the county is not a competitor in the health care provision market and cannot be charged with having used market position to exclude competition."  *Id*. at 759; *see also Lucas v. Citizens Commc'ns Co*., 244 F. App'x 774, 778 (9th Cir. 2007) (affirming summary judgment for defendant utility cooperative because the cooperative was not a participant in the relevant market that it allegedly attempted to monopolize).

Other circuits are in accord.  In *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1061-62 (2d Cir. 1996), the Second Circuit affirmed dismissal of a monopolization claim, finding that:

> To state a claim for monopolization, [plaintiff] must
> allege, among other things, that the defendants possess
> monopoly power in a relevant market….  In this case,
> however, none of the … defendants competes in the
> relevant market….  Thus, [plaintiff's] monopolization
> claim must fail, since it is axiomatic that a firm cannot
> monopolize a market in which it does not compete.

*Vacated on other grounds*, 525 U.S. 128 (1998).  *See also Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 603 F. Supp. 1077, 1087 (S.D. Ind. 1985), *aff'd*, 784 F.2d 1325 (7th Cir. 1986) ("Blue Cross/Blue Shield cannot, as a matter of law, monopolize or attempt to monopolize the hospital services industry because Blue Cross/Blue Shield has never and does not now compete in that market."); *White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 104 (4th Cir. 1987) (defendant hospital could not monopolize a physician-services market in which it did not compete); *Spanish Broad. Sys. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1075 (11th Cir. 2004) ("There is no question that [defendant] does not participate in the [relevant market.]  Thus, [it] cannot attempt to monopolize that market.").

Furthermore, the fact that ICANN approves new TLDs and registry operators, and may therefore exercise some influence over the alleged relevant market, is not sufficient to deem ICANN a competitor in the TLD registry market. In fact, courts have dismissed Section 2 claims where the alleged monopolist did not compete, but was alleged to have "influence" in the relevant market. In *Olde Monmouth Stock Transfer Co. v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 392-93 (S.D.N.Y. 2007), the defendant was not a competitor in the stock transfer market, but had the ability to select companies to serve this market. The court found that there is "no legal authority for the proposition that market power under Section 2 of the Sherman Act encompasses 'influence' by a non-competitor over the relevant market." *Id*. A similar "influence" theory was rejected in *Official Airline Guides, Inc. v. F.T.C.*, 630 F.2d 920, 925-27 (2d Cir. 1980), where the court held that a monopolist in one market could not monopolize an adjacent market if it did not compete in that market. *See also POURfect Prods. v. KitchenAid*, No. CV-09-2660 PHXGMS, 2010 WL 1769413, at *2 (D. Ariz. May 3, 2010) (dismissing monopolization claim where conclusory allegation that defendant enjoyed "influence" over relevant market was "insufficient under the *Twombly* pleading requirements").

ICANN does not compete in the TLD registry market and, thus, cannot monopolize that market, as a matter of law. The Section 2 claim cannot survive.

### 2.     Name.space Has Not Alleged Monopolization Of Any Other Market.

Name.space argues on appeal that there are "two [other] distinct markets alleged in the Complaint (the market for domain names and the market for blocking or defensive registration services)." (Opening Br. at 34-35.) But none of the nine causes of action alleged in name.space's Complaint asserts a claim relating to these "other markets." Courts routinely reject claimants' attempts to rewrite or amend pleadings through motion practice, and name.space's attempt to do so here should likewise be denied. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (a "party may not amend [its] pleading through statements in [its] briefs"); *Olde Monmouth Stock Transfer Co.*, 485 F. Supp. 2d at 393 ("parties cannot amend their pleadings through issues raised solely in their briefs") (internal citations omitted). Here, name.space made a passing reference to the existence of these alleged markets in its Complaint (ER at 34, ¶¶ 79-80), but "a fleeting reference in a…complaint to facts that might support a proposed [theory] is [in]sufficient, on its own, to preserve that…theory for appellate review." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 444 (3d Cir. 1997). Indeed, "'[p]articularly where important and complex issues of law are presented, a far

more detailed exposition of argument is required to preserve an issue.'" *Id*. (citation omitted).[6]

Even had name.space asserted Section 2 claims with respect to these two other markets, the claims must be dismissed because name.space does not allege that it is a consumer or competitor in either the domain name market or the market for defensive registration services. Because a plaintiff must compete in, or purchase services or otherwise participate in, the allegedly restrained market, absent such allegations, name.space lacks standing to bring claims related to those markets. *Glenn Holly Entm't., Inc. v. Tektronic Inc.*, 352 F.3d 367, 372 (9th Cir. 2003) (must "be a participant in the same market as the alleged malefactors") (quoting *American Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999)); *SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.*, 48 F.3d 39, 44-45 (1st Cir. 1995) (must be "a customer who obtains services in the threatened market"); *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 540 (9th Cir. 1987) ("must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained market").[7]

_____

[6] Name.space also argues that it has "satisfied the elements of a conspiracy to monopolize claim" regarding the TLD registry market. (Opening Br. at 34.) But again, no such cause of action is alleged in the Complaint.

[7] In addition, because name.space is not a competitor or consumer in these "other markets," name.space cannot establish antitrust injury in these other markets. *See, e.g., McCullough v. Zimmer, Inc.*, 382 F. App'x 225, 229 (3d Cir.

### 3. ICANN Has Not Engaged In Exclusionary Conduct.

Even if ICANN could somehow monopolize a market in which it does not compete, name.space's Section 2 claim was still properly dismissed because ICANN has not engaged in exclusionary conduct to acquire or maintain its alleged monopoly power. Name.space concedes that ICANN was provided the sole authority to delegate TLDs and select registries through "its agreements with the U.S. government." (ER at 25-26, ¶¶ 37, 38.) As a result, the district court found that "whatever monopoly power ICANN may possess was 'thrust upon' it as the result of 'historic accident' rather than the result of 'willful acquisition'" and therefore cannot give rise to a claim of unlawful acquisition of monopoly power. (ER at 10; Opening Br. at 32-35.)[8]

---

(continued…)

2010) (no antitrust injury where plaintiff orthopedic device distributors were neither competitors nor consumers in the relevant market).

[8] *See also United States v. Aluminum Co. of Am.*, 148 F.2d 416, 429-30 (2d Cir. 1945); *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 548 (9th Cir. 1991) ("The Sherman Act also has not been interpreted to penalize natural monopolies. A firm that creates a valued service or product should not be punished with treble damages and criminal sanctions merely because the firm finds itself to be the holder of a natural monopoly."); *Credit Chequers Info. Servs. v. CBA, Inc*., No. 98-CIV-3868 (RPP),1999 WL 253600, at *11-12 (S.D.N.Y. Apr. 29, 1999) (ruling that monopoly power was an "academic question" because "forces external to [the defendant] created any monopoly power they have in" the relevant market); *Standfacts Credit Servs. v. Experian Info. Solutions, Inc*., 294 Fed. App'x 271, 272 (9th Cir. 2008) (same).

36

Name.space challenges this finding only insofar as the district court, in
namespace's view, did not consider name.space's "monopoly maintenance" claim.
(Opening Br. at 33.)  But name.space's monopoly maintenance theory also fails.
In *Grinnell Corp*., the Supreme Court concluded that the "willful acquisition *or*
maintenance of" monopoly power must be "distinguished from growth or
development as a consequence of a superior product, business acumen, or historic
accident."  384 U.S. at 570-71 (emphasis added).  Here, name.space does not
allege that ICANN has maintained its "monopoly" by engaging in exclusionary
practices unrelated to the authority conferred on ICANN pursuant to its agreements
with the U.S. government.  All name.space has alleged is that ICANN has
maintained its monopoly by continuing to engage, since 1998, in conduct that was
specifically authorized by the U.S. government (*i.e.*, determining the processes and
procedures for delegating TLDs and selecting registries).  Because the alleged
conduct cannot be distinguished from the exclusive authority "thrust upon"
ICANN pursuant to its agreements with the U.S. government, that conduct cannot
support name.space's monopoly maintenance claim.  *Id*.

Setting aside that ICANN lawfully acquired its alleged "monopoly," the
perceived acts of mistreatment that name.space alleges do not rise to the level of
exclusionary conduct.  On appeal, name.space claims that the alleged conspiracy,
which purportedly gave rise to "the rules and procedures of the 2012 Application

37

Process," constitutes exclusionary conduct. (Opening Br. at 33.) But the Complaint fails to state a conspiracy claim for the reasons described above, and thus cannot form the basis for a claim of exclusionary conduct. *Trinko*, 540 U.S. at 407 (no monopolization claim "unless it is accompanied by an element of anticompetitive conduct").

Name.space claimed below that ICANN's setting of the TLD application fee in the 2012 Application Round amounted to exclusionary conduct. (*See, e.g.,* ER at 18, ¶ 7.) But, as the district court correctly found, setting the TLD application fee in order to cover the costs associated with the review of the applications submitted in the 2012 Application Round could not violate the antitrust laws because the charging of high – or even supra-competitive – fees is not exclusionary conduct as a matter of law. Indeed, the Supreme Court has held that a monopolist (assuming ICANN is one) can charge whatever price it wants without violating the antitrust laws. *Trinko*, 540 U.S. at 407; *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 447-48 (2009) ("Simply possessing monopoly power and charging monopoly prices does not violate § 2 …."); *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 548-49 (9th Cir. 1991). As the Supreme Court found in *Trinko*, "[t]he mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system." *Trinko*, 540 U.S. at 407.

### C.   The District Court Correctly Found That Name.space Has Not Suffered An Antitrust Injury.

The antitrust laws "were enacted for 'the protection of competition, not competitors.'"  *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)).  Thus, "antitrust injury" is an element of every private antitrust claim.  *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197-98 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 573 (2012).  To establish antitrust injury, a plaintiff must allege facts demonstrating that its injury stems from an "anti-competitive aspect of the practice under scrutiny" and "that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place."  *Atl. Richfield*, 495 U.S. at 334, 342-44.  Accordingly, courts have found antitrust injury to be lacking where a plaintiff fails to allege facts demonstrating an injury to competition as a whole, or where a plaintiff's injury arises from increased competition.  Here, name.space's allegations of injury suffer from both of these shortcomings, as the district court found.  (ER at 10.)

Name.space alleges that it has been precluded from entering the TLD registry market, causing it to lose "millions of dollars in potential revenue."  (ER at 38-39, ¶¶ 104, 105.)  But name.space has not alleged any facts demonstrating that the market as a whole has become less competitive due to this alleged exclusion.  To the contrary, name.space's allegations demonstrate that there are numerous

39

competitors in the alleged TLD registry market, including hundreds of companies seeking to launch new TLDs via ICANN's 2012 Application Round, as well as registry operators servicing existing TLDs.  (ER at 23, ¶ 29 (alleging that approximately 275 TLDs currently resolve in the DNS); ER at 36, ¶ 88 (alleging that at least 189 applications in the 2012 Application Round seek approval of TLDs parallel to those allegedly used by name.space); ER at 19, ¶ 10 (same).)  If, in fact, name.space has suffered any injury, that injury is only to itself and not competition as a whole, which is not an antitrust injury.  *See also* ER at 31-32, ¶ 69 (conceding name.space is "uniquely situated" with respect to the effect of the procedures adopted for the 2012 Application Round).

The district court agreed:

> [B]ecause many entities did participate in the 2012 Application Round, Plaintiff's conclusory allegations do not support even an inference that the 2012 Application Round's application fee has restrained trade…. At most, Plaintiff has alleged that it has been harmed by ICANN's 2012 application fee, but it alleges no evidentiary facts suggesting that the fee has actually injured competition. The injury Plaintiff alleges to its preferred business model is insufficient to support an antitrust claim.

(ER at 10.)[9]

The district court's decision to dismiss name.space's Complaint for failure to allege antitrust injury is consistent with the multitude of Ninth Circuit decisions dismissing antitrust claims when the claimant's alleged injury is to itself alone and not to competition as a whole. For example, in *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 812 (9th Cir. 1988), the plaintiff alleged that it was driven from the market by its competitors. This Court affirmed the dismissal of plaintiff's antitrust claims for failure to state an antitrust injury because "[i]t is injury to the market or to competition in general, not merely injury to individuals or individual firms that is significant," and the plaintiff's own allegations showed that competition was thriving. *Id*. at 812-13. Likewise, in *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989), this Court found that the plaintiff's foreclosure from the market was not an injury to competition because it was not "unreasonably disruptive of market functions such as price setting, resource allocation, market entry, or output designation." *See also Brantley*, 675 F.3d at 1198 ("[P]laintiffs must plead an injury to competition beyond the impact on the

---

[9] Name.space argues that the district court erred in finding that "many entities" participated in the 2012 Application Round, but the district court's finding is supported by the record. (ER at 36, ¶ 88.) Moreover, while name.space asserts on appeal that it has made "specific allegations that the number of applicants was actually quite low" (Opening Br. at 37), name.space does not cite any allegation in the Complaint in support of its position, and none exists. As name.space is fully aware, ICANN received 1,930 applications in the 2012 Application Round from over 700 applicants.

plaintiffs themselves."); *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003) ("Where the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury.").[10]

In response to the district court's finding that name.space has not alleged an "antitrust injury," name.space retreats to its purely conclusory allegations that competition has been "suppressed or eliminated," ICANN's conduct "limits consumer choice," and ICANN has made "the price of registering a TLD . . . artificially high." (Opening Br. at 35-36.) But a plaintiff "may not merely recite the bare legal conclusion that competition has been restrained unreasonably" in an effort to state an antitrust injury. *Les Shockley Racing, Inc.*, 884 F.2d at 508; *see also High Tek USA, Inc. v. Heat Control, Inc.*, No. 12-cv-00805 YGR, 2012 WL 2979051, at *3 (N.D. Cal. July 18, 2012) (finding allegations that conduct "unreasonably restrains competition" insufficient).[11]

---

[10] Numerous district court decisions are in accord. For example, in *Verisign, Inc. v. Internet Corp. for Assigned Names and Numbers*, No. CV 04-1292 (CTX), 2004 WL 1945561, at *6 (C.D. Cal. May 18, 2004), the Central District of California rejected antitrust claims brought against ICANN by the operator of the .COM and .NET top level domains because competition amongst top level domains was "vigorous" and the plaintiff had "not alleged anything more than injury to its own business." *See also Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1079 (S.D. Cal. 2012) (no antitrust injury where "the Complaint lacks allegations that support anticompetitive effects in any forum outside of Facebook.com, and any harm other than harm to Sambreel itself").

[11] Name.space cites *Manwin Licensing Int'l S.A.R.L, et al. v. ICM Registry, LLC, et al.*, No. CV 11-9514 PSG JCGX, 2012 WL 3962566 (C.D. Cal. August 14, 2012), but the district court in *Manwin* cited eighteen paragraphs in the Complaint

Second, name.space's real concern is that name.space may face ***increased***

competition in the TLD registry market, which is not antitrust injury.  In particular,

name.space's claim of injury is based on its fear that the TLDs it operates in its

alternate root zone may have to compete with similar TLDs in the DNS.  (ER at

32, ¶ 73 ("ICANN knowingly and willingly created the application process for the

2012 Application Round without adequate safeguards in place to protect the 2000

applicants' rights in their proposed or already operating TLDs."); ER at 36, ¶ 90

(noting that this refusal "has enabled and induced 2012 applicants to apply for

delegation of [name.space's] gTLDs as part of the 2012 Application Round.").)

This is not an antitrust injury because the alleged injury, if any, will be caused by

increased competition.  *Cargill, Inc. v. Monfort of Colorado, Inc*., 479 U.S. 104,

122 (1986) ("a showing of loss or damage due merely to increased competition

does not constitute [antitrust] injury"); *ECOS Electronics Corp. v. Underwriters

Labs*., 743 F.2d 498, 502-03 (7th Cir. 1984) (no antitrust injury where the plaintiff

was merely complaining that its competitor received UL certification, but the

plaintiff had not); *Atlantic Richfield*, 495 U.S. at 343-44 (While "[c]onduct in

---

(continued…)

containing detailed factual allegations that, in the court's view, were sufficient to
suggest that competition as a whole may have been affected by the defendants'
conduct.  *Id*. at *9.  In contrast with the detailed allegations in *Manwin*,
name.space's Complaint does not allege any facts – nor can it – supporting its
conclusory assertion that the competitive process has been injured.

violation of the antitrust laws" may reduce competition, increase competition, or be "neutral as to competition," the "antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior.").

### D.    The District Court Correctly Dismissed Name.space's Trademark Claims.

"The Ninth Circuit requires 'actual or imminent infringement' for a claim to be justiciable."  (ER at 11, quoting *Swedlow, Inc. v. Rohm & Haas Co.*, 455 F.2d 884, 886 (9th Cir. 1972).)  Claims that rest upon "contingent future events that may not occur as anticipated, or indeed may not occur at all" are not ripe for adjudication.  *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (quoting *Texas v. U.S.*, 523 U.S. 296, 300 (1998) (internal quotations and citations omitted)).  At best, name.space's thin claims suffer from this malady.

The basis for name.space's trademark and unfair competition claims is ICANN's acceptance of applications from third parties to operate TLDs that resemble the TLDs name.space operates in its alternate root zone.  (Opening Br. at 39, 40, 41, 42.)  However, name.space fails to allege how the mere acceptance of TLD applications gives rise to actionable trademark infringement, let alone how this could result in any actual or imminent harm to name.space.

"Infringement claims are subject to a commercial use requirement."  *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005).  Mere acceptance of

applications for new TLDs is not a present or past act of infringement because the TLDs have not yet been used in commerce, the very basis of an infringement claim. *See also* 15 U.S.C. § 1125(a)(1) ("Any person who, on or in connection with any goods or services…***uses in commerce*** any word…likely to cause confusion…shall be liable….") (emphasis added). When there has been no "use" of any of name.space's purported marks by ICANN (or anyone else), there is no case or controversy. *See, e.g., NTN Commc'ns, Inc. v. Interactive Network, Inc.*, No. C 94-20777 RMW (ENE), 37 U.S.P.Q.2d (BNA) 1475, 1995 U.S. Dist. LEXIS 20322, at *7 (N.D. Cal. Aug. 17, 1995) (Lanham Act claim was not ripe because complaint lacked allegations that defendant had "begun to use" the allegedly infringing marks in commerce "as required for a claim under the Lanham Act or the similar state law claims.").

A trademark is "used" in commerce "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127. Setting aside whether name.space could even establish trademark rights in its purported TLDs, the Complaint is devoid of any allegation that the allegedly infringing TLDs have been used or displayed in the sale or advertising of services, or that any services have been rendered in commerce in connection with the allegedly infringing TLDs—not by ICANN or anyone else. Instead, the allegations in the Complaint refer to "ICANN's ***willingness to allow*** competing TLD registries

45

to use the identical gTLDs in commerce on the ICANN-controlled DNS…." (ER at 41, 43, ¶¶ 123, 136 (emphasis added).) Such allegations fall far short of establishing a justiciable case or controversy – against ICANN or any other entity – and demonstrate that name.space seeks an advisory opinion about what the law would be upon hypothetical infringements by third parties. These allegations also underscore that, if and when TLDs are delegated, any competition would be between name.space and other TLD registries,[12] making name.space's unfair competition claims against ICANN – which name.space does not allege to be its competitor – untenable. *Halicki v. United Artists Commc'ns, Inc*., 812 F.2d 1213, 1214 (9th Cir. 1987) (noting unfair competition requires alleged injury to result from conduct of a competitor).

Name.space incorrectly argues that ICANN "has made name.space's marks available for sale…." (Opening Br. at 39.) As the Complaint concedes, the 2012 Application Round permitted all interested parties, including name.space, to apply to ICANN for any TLD they wished to operate. (ER at 30, 32, 36, ¶¶ 62, 70, 87.) Thus, instead of making any of name.space's TLDs "available for sale" or rendering services under those TLDs, ICANN merely received applications *from others* seeking to operate certain TLDs in the DNS. The reality of what ICANN

---

[12] Name.space specifically alleges in its Complaint that consumer confusion would be between name.space and its competitors—not between name.space and ICANN. (ER at 41,43, 45, ¶¶ 124, 136, 145(c).)

has done, and not done, distinguishes the cases name.space relies on in its opening brief, each of which includes a defendant that actually offered for sale or marketed products bearing allegedly infringing marks or trade dress. *Nova Wines, Inc. v. Adler Fels Winery LLC*, 467 F. Supp. 2d 965, 971-72 (N.D. Cal. 2006) (noting that the defendant "was marketing" and "urging consumers to place orders" for wine bearing allegedly infringing trade dress); *Millennium Labs., Inc. v. Ameritox, Ltd.*, No. 12CV1063-MMA (JMA), 2012 U.S. Dist. LEXIS 147528, at *3 (S.D. Cal. Oct. 12, 2012) (describing the plaintiff's allegation that the defendant "offered for sale" reports that allegedly copied the plaintiff's trade dress); *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir. 1997) (noting that the plaintiff "admitted to offering to sell" counterfeit products).

ICANN's acceptance of TLD applications simply does not constitute a "use in commerce" of any mark, as other courts have found in similar situations.  For example, in *Lockheed Martin Corp. v. Network Solutions, Inc*., 985 F. Supp. 949 (C.D. Cal. 1997), *aff'd* 194 F.3d 980 (9th Cir. 1999), the court rejected the plaintiff's  Lanham Act claim, which was based on the defendant's acceptance of domain name registrations that resembled the plaintiff's trademark.  The court found that merely accepting domain name registrations from others was not a use of the alleged mark in connection with goods or services and was therefore not prohibited by Section 43(a).  *Id*. at 959.  Likewise, in *Sociedad Anonima Vina*

*Santa Rita v. U.S. Dep't of the Treasury*, 193 F. Supp. 2d 6, 25 (D.D.C. 2001), the

court rejected Lanham Act claims against the Bureau of Alcohol, Tobacco and

Firearms for approving the allegedly infringing "Santa Rita Hills" indication as an

American viticultural area because "neither the ATF nor any other entity has yet

employed the name in a manner that could give rise to a cause of action for

trademark infringement or dilution." *Id*.

Indeed, name.space's claims are as deficient as those that might be brought

against the U.S. Food and Drug Administration for accepting applications for

allegedly infringing drug names, or against a Secretary of State for accepting

applications of allegedly infringing business names. The acceptance of such

applications does not make these entities liable for trademark infringement; and

nor should ICANN's acceptance of TLD applications.

Moreover, because there has been no "use" of name.space's alleged marks,

it would be impossible for a court to undertake a likelihood of confusion analysis

for determining infringement—or even to know whether the allegedly infringing

marks are functioning as trademarks.[13]  Name.space's infringement claims would

---

[13] For example, this Court has determined that registration of a domain name alone is insufficient to constitute infringement. *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1035 (9th Cir. 2011) ("Registration of a domain name without more does not constitute service mark or trademark infringement."); *see also Lockheed Martin Corp. v. Network Solutions, Inc*., 985 F. Supp. 949, 956 (C.D. Cal. 1997) ("When a domain name is used only to indicate an address on the Internet, the domain name is not functioning as a trademark.").

require a court to presume a number of unknown variables, including whether

ICANN will actually approve an allegedly infringing TLD for delegation, whether

the applicant for that TLD will actually use the allegedly infringing TLD, whether

the use of the allegedly infringing TLD will be as a source identifier, whether the

use of the TLD will be in competition with name.space and whether such use will

result in likelihood of confusion.  As summarized in an order dismissing similar

trademark claims brought against ICANN by another alleged TLD operator:

> Infringement is, at this stage, merely speculative.
>
> Without knowing, for instance, which party might be
> chosen to operate a potential .WEB TLD, [plaintiff]
> cannot know whether that party itself has a plausible
> claim to trademark in .WEB, whether ICANN will
> change its mind about using .WEB as a TLD, or whether
> there is confusion between [plaintiff's] registered mark
> and ICANN's use of .WEB. Prior to ICANN selecting an
> applicant, if any, to operate the TLD, the parties will not
> be able to build a factual record that will allow the court
> to answer any of these questions. No one has used the
> mark or has the immediate capability and intent to use
> the mark. Therefore the issue is not ripe.

*Image Online Design, Inc. v. Internet Corp. for Assigned Names & Numbers*, No. 12-cv-08968 DDP (JCx), 2013 WL 489899, at *5 (C.D. Cal. Feb. 7, 2013).

Finally, any harm from future TLD delegation is utterly speculative. None of the new TLDs that overlap with name.space's claimed TLDs have been used by the third parties that applied for them. The desires of TLD applicants to use allegedly infringing TLDs at some point in the future are insufficient to establish a justiciable controversy.[14] And whether those TLDs will ever be used by the registry operators in a manner that would infringe some rights that name.space claims to have in the TLDs calls for pure conjecture at this time.

In sum, no act of infringement or unfair competition has been pled, and no defined and imminent threat of infringement or unfair competition exists. The

---

[14] Since name.space makes clear that its claims are based on ICANN's acceptance of applications and fees from TLD applicants – and since name.space alleges that none of the new TLDs are yet in use by the applicants (ER at 36, ¶ 89) – name.space's claims for contributory infringement and vicarious liability, which claims require infringement by a third party, are similarly not ripe for adjudication. Name.space has also not alleged (nor could it) the type of relationship between ICANN and the TLD applicants that could lead to liability for such claims. *See, e.g., Lockheed Martin Corp. v. Network Solutions, Inc*., 194 F.3d 980, 985 (9th Cir. 1999) (domain name registrar was not liable for contributory infringement because its "rote translation service does not entail the kind of direct control and monitoring required…"); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (vicarious liability for trademark infringement requires "a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.") (internal quotations omitted).

district court's dismissal of name.space's trademark claims for failing to establish a justiciable case or controversy should be affirmed.

> **E.    The District Court Correctly Dismissed Name.space's Tortious Interference Claims.**

In its Eighth and Ninth Claims for Relief, name.space asserts claims for tortious interference with contract and tortious interference with prospective economic advantage.  Both fail as a matter of law, as the district court correctly concluded.

> **1.    Name.space's Claim For Tortious Interference With Contract Was Properly Dismissed.**

"Under California law, a claim for intentional interference with contract requires:  (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce breach or disruption to the contract; (4) actual breach or disruption; and (5) resulting damage."  *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 825-26 (9th Cir. 2008).  The essence of the claim is the existence of a legally binding contract that was breached or disrupted by the defendant's intentional act.  *Beck v. Am. Health Grp., Int'l, Inc.*, 211 Cal. App. 3d 1555, 1566-67 (1989).

The district court dismissed name.space's tortious interference with contract claim for two reasons.  First, the district court found that "[t]he Complaint's

conclusory allegations concerning ICANN's knowledge of Plaintiff's relationships with its clients do not satisfy the *Twombly* standard." (ER at 12.) Second, "the Complaint does not allege any intentional acts undertaken by ICANN 'designed to induce breach' of Plaintiff's contracts." (*Id.*)

Citing *Conte v. Jakks Pac., Inc.*, No. 12-cv-00006 LJOSA, 2012 WL 6115632 (E.D. Cal. Dec. 10, 2012), name.space asserts that the district court erred in finding name.space's interference claims "conclusory." But *Conte* does not support name.space's argument. In *Conte*, the defendant filed a counterclaim against the plaintiff for tortious interference with contract because the plaintiff sent a letter to the defendant's customers warning the customers that the defendant's product was "nearly identical" to a product "patented, trademarked, and copyrighted" to the plaintiff. *Id*. at *1. The parties did not dispute that the plaintiff had knowledge of the defendant's relationships with its customers, and the court found that the defendant alleged facts sufficient to support its claim that the letters were sent "'for the express purpose of interfering with [the defendant's] relationships with its customers" and that the plaintiff in fact induced certain customers "to repudiate their existing contractual obligations.'" *Id*. at *5 (citation omitted).

None of the facts relied on by the Court in *Conte* are present here. All name.space has alleged – albeit in summary fashion – is that ICANN has interfered

with name.space's (unidentified) customer contracts "by permitting prospective

TLD registries, including name.space's competitors, to apply for delegation to the

DNS of the same gTLDs that are the subject of name.space's existing customer

contracts [related to names.space's TLDs that resolve on an alternate root zone]."

(ER at 47-48, ¶¶ 160-164.)  This conclusory claim fails because, unlike the

defendant-counterclaimant in *Conte*, name.space has not alleged any ***facts***

identifying:  (1) the relevant contracts; (2) ICANN's knowledge of the contracts;

(3) an actual disruption of the contracts; (4) ICANN acts "designed to induce

breach" of the contracts; or (5) the resulting damage to name.space.  *Semi-*

*Materials Co., Ltd. v. SunPods, Inc.*, No. 11-cv-06719-LHK, 2012 WL 3962487, at

*6 (N.D. Cal. Sept. 10, 2012) (dismissing interference claim because the plaintiff

"has not identified any of Defendants' intentional acts designed to induce a breach,

actual disruption of the contractual relationship, or damages."); *Michaluk v. Vohra*

*Health Servs., P.A.*, No. CIV S-12-1162 KJM, 2012 WL 3993940, at *6-7 (E.D.

Cal. Sept. 11, 2012) (same).[15]

    Name.space also asserts that it "is not required to supplement its Complaint

by adding the names of each of its customers, and a summary of the terms of those

---

[15] In particular, name.space fails to explain how the mere acceptance of
applications to operate TLDs linked to the DNS has actually caused name.space to
breach contracts with customers in its alternate root zone.  *Haag v. Countrywide*
*Bank, F.S.B.*, No. 2:11-cv-00923-GMN-CWH, 2012 WL 1831872, at *5-6 (D.
Nev. May 18, 2012) (dismissing interference claim where actual disruption was not
"plausible").

agreements." (Opening Br. at 43.) But name.space is required to allege a factual basis for its claim that ICANN had knowledge of name.space's relationships with its clients and that ICANN undertook intentional acts designed to induce breach of Plaintiff's contracts. *Semi-Materials Co., Ltd.*, 2012 WL 3962487, at *5-6. Name.space's Complaint is silent on these matters and was therefore properly dismissed.

### 2.  Name.space's Claim For Tortious Interference with Prospective Economic Advantage Was Properly Dismissed.

A claim for intentional interference with prospective economic advantage requires:  "'(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.'" *Pardi v. Kaiser Found. Hosps*., 389 F.3d 840, 852 (9th Cir. 2004) (quoting *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1153 (2003)). The California Supreme Court has clarified that the third element requires a plaintiff to plead and prove "that the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'" *Korea Supply Co*., 29 Cal. 4th at 1153 (quoting *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995)).

The Complaint fails to allege any intentional actions undertaken by ICANN "designed to disrupt" the relationship name.space has with its clients or evidentiary facts of actual disruption and resulting economic harm. Additionally, because name.space's antitrust and trademark infringement claims are not viable, name.space has not alleged the independent wrongfulness required to state a claim for interference with prospective economic advantage. *SC Manufactured Homes, Inc. v. Liebert*, 162 Cal. App. 4th 68, 92-93 (2008) (dismissing intentional interference claims where plaintiff failed to establish that the alleged conduct also violated the antitrust laws).

## F.    The District Court Correctly Dismissed Name.space's UCL Claim.

In its Sixth Claim for Relief, name.space asserts that ICANN has violated California's Unfair Competition Law ("UCL"). (ER at 44-46, ¶¶ 145-147.) The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 183 (1999).

The district court rejected name.space's claim arising under the UCL because the claim "relies on the Complaint's [deficient] claims for antitrust violations and trademark infringement to supply the required 'unlawful' business practices to state a claim." (ER at 13.) The district court's finding is well supported in the law. Claims alleging illegal practices under the UCL fail if the

55

underlying predicate violation is not established.  *See Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 717-18 (2001).  Name.space's failure to state plausible antitrust or trademark infringement claims is thus fatal to its UCL claim. *Aguilar v. Atl. Richfield Co.*, 25 Cal. 4th 826, 866-67 (2001) (dismissal of a Cartwright Act claim required dismissal of an "unlawful" UCL claim premised on the same alleged violation).

Name.space does not appear to appeal its claims under the "unfair" and "deceptive" prongs of the UCL and thereby waives its right to appeal these claims. *See United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005).  But the claims fail even absent waiver.  "If the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason—because it unreasonably restrains competition and harms consumers—the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers."  *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001); *see also Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 183 (holding that conduct the Legislature has determined to be lawful under the Cartwright Act cannot, as a matter of law, be "unfair" under the UCL).  Because name.space cannot support its antitrust or trademark infringement claims, name.space is foreclosed from repackaging those allegations as an "unfair" business practice based on the same allegedly anticompetitive conduct.

Finally, because name.space has not alleged any facts suggesting that ICANN engaged in deceptive conduct or that name.space actually relied on such conduct, name.space has not stated a "fraudulent" UCL claim. *In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 326 (2009) (a business practice is "fraudulent" under the UCL if a "reasonable consumer" is "likely to be deceived" by the conduct and the plaintiff "actually relied on" such conduct).

## VIII. CONCLUSION

For the reasons stated above, ICANN respectfully requests that this Court affirm the district court's order granting ICANN's motion to dismiss.

Dated:  November 8, 2013                  Respectfully submitted,

                                          Jones Day


                                          By:   /s/ Jeffrey A. LeVee
                                              Jeffrey A. LeVee
                                              Eric P. Enson
                                              Kathleen P. Wallace

                                          Attorneys for Defendant-Appellee
                                          INTERNET CORPORATION FOR
                                          ASSIGNED NAMES AND
                                          NUMBERS

57

## COMBINED CERTIFICATIONS

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, I hereby certify that I am not aware of any related cases that are currently pending before this Court.

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, I hereby certify as follows:

1.     This brief complies with the type volume limitation of Rule 32(a)(7)(B)(i) because it contains 13,403 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

2.     The brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14 point Times New Roman font.

Dated:  November 8, 2013                    Respectfully submitted,

Jones Day

By:    /s/ Jeffrey A. LeVee
       Jeffrey A. LeVee
       Eric P. Enson
       Kathleen P. Wallace

Attorneys for Defendant-Appellee
INTERNET CORPORATION FOR
ASSIGNED NAMES AND
NUMBERS

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2013, I electronically filed the foregoing APPELLEE'S ANSWERING BRIEF and APPELLEE'S SUPPLEMENTAL EXCERPTS OF RECORD with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

All participants in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Pursuant to Ninth Circuit Rule 31-1, paper copies of the foregoing APPELLEE'S ANSWERING BRIEF and APPELLEE'S SUPPLEMENTAL EXCERPTS OF RECORD will be submitted to the Court at the direction of the Clerk of the Court.

Dated:  November 8, 2013

By:   /s/ Jeffrey A. LeVee
       Jeffrey A. LeVee

LAI-3200796v4