Appeal No. 13-55553

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

**NAME.SPACE, INC.,**

*Plaintiff-Appellant*,

vs.

**INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS,**

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Central District of California
The Honorable Percy Anderson Presiding
(Case No. 2:12-cv-08676-PA-PLA)

---

**APPELLANT'S REPLY BRIEF**

---

MORRISON & FOERSTER LLP
Michael B. Miller
Craig B. Whitney
Adam J. Hunt
1290 Avenue of the Americas
New York, NY 10104
Telephone:  (212) 468-8000

*Attorneys for Plaintiff-Appellant*
NAME.SPACE, INC.

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

ARGUMENT ......................................................................................... 1

I.    NAME.SPACE ADEQUATELY PLEADED A CONSPIRACY
      CLAIM UNDER SECTION 1 OF THE SHERMAN ACT. ......................... 1

      A.    ICANN Concedes That it Had Sufficient Notice of
            name.space's Conspiracy Allegations, But Seeks to Hold
            name.space's Complaint to a Higher Burden of Proof on a
            Motion to Dismiss. .............................................................. 1

      B.    name.space Alleged a Plausible Conspiracy. ........................ 5

      C.    ICANN Can Be Held Liable Because its "Ultimate Decision-
            Makers" Participated in the Conspiracy. .............................. 7

II.   NAME.SPACE ADEQUATELY PLEADED A
      MONOPOLIZATION CLAIMS UNDER SECTION 2 OF THE
      SHERMAN ACT. ..................................................................... 9

      A.    ICANN Competes in the Relevant Markets. ......................... 10

      B.    ICANN Engaged in Unlawful Exclusionary Conduct to
            Maintain its Monopoly Power. ........................................... 13

      C.    ICANN Failed to Move to Dismiss name.space's Section 2
            Claims With Respect to Two Distinct Markets. .................... 15

III.  NAME.SPACE PLEADED THAT ICANN'S EXCLUSIONARY
      CONDUCT CAUSED AN ANTITRUST INJURY. ............................. 17

IV.   NAME.SPACE'S TRADEMARK CLAIMS ARE RIPE BECAUSE
      ICANN HAS MADE NAME.SPACE'S MARKS AVAILABLE FOR
      SALE. ..................................................................................... 19

V.    NAME.SPACE'S REMAINING CLAIMS WERE IMPROPERLY
      DISMISSED. ............................................................................ 23

VI.   CONCLUSION. ........................................................................ 23

COMBINED CERTIFICATIONS ............................................................ 24

STATEMENT OF RELATED CASES ..................................................... 24

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alaska Airlines Inc. v. United Airlines, Inc.*,
   948 F.2d 536 (9th Cir. 1991) ...............................................................13

*Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*,
   456 U.S. 556 (1982).........................................................................8, 9

*Arista Records LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010) ...............................................................4

*Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*,
   603 F. Supp. 1077 (S.D. Ind. 1985), *aff'd*, 784 F.2d 1325 (7th Cir. 1986).. 11-12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................2, 3, 4, 5

*Black Box Corp. v. Avaya, Inc.*,
   No. 07-6161, 2008 U.S. Dist. LEXIS 72821 (D.N.J. Aug. 29, 2008).............. 6-7

*Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.*,
   611 F.3d 495 (9th Cir. 2010).............................................................6, 9

*Cnty. of Tuolumne v. Sonora Cmty. Hosp.*,
   236 F.3d 1148 (9th Cir. 2001) ...............................................................1

*Credit Chequers Info Servs. v. CBA, Inc.*,
   No. 98 Civ. 3868, 1999 U.S. Dist. LEXIS 6084
   (S.D.N.Y. Apr. 28, 1999), *aff'd*, 205 F.3d 1322 (2d Cir. 2000)........................13

*Datel Holdings Ltd. v. Microsoft Corp.*,
   712 F. Supp. 2d 974 (N.D. Cal. 2010)...................................................7

*Discon, Inc. v. NYNEX Corp.*,
   93 F.3d 1055 (2d Cir. 1996) ...............................................................11

*Eagle v. Star-Kist Foods, Inc.*,
   812 F.2d 538 (9th Cir. 1987) ...............................................................17

*Gammel v. Hewlett-Packard Co.*,
    905 F. Supp. 2d 1052 (C.D. Cal. 2012) ............................................................13

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
    352 F.3d 367 (9th Cir. 2003) ....................................................................16, 17

*Goldstein v. Bank of Am., N.A.*,
    No. 1:09-cv-329,
    2010 U.S. Dist. LEXIS 28887 (W.D.N.C. Jan. 10, 2010)....................................6

*GoPets Ltd. v. Hise*,
    657 F.3d 1024 (9th Cir. 2011) ..........................................................................21

*GSI Tech., Inc. v. Cypress Semiconductor Corp.*,
    No. 5:11-cv-03613,
    2012 U.S. Dist. LEXIS 93888 (N.D. Cal. July 6, 2012) ................................. 3-4

*Image Online Design, Inc. v. Internet Corp. for Assigned Names &*
    *Nos.*, No. CV 12-08968 DDP, 2013 WL 489899 (C.D. Cal. Feb. 7, 2013).......22

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112 (3d Cir. 1999) ...............................................................................3

*In re Citric Acid Litig.*,
    996 F. Supp. 951 (N.D. Cal. 1998), *aff'd*, 191 F.3d 1090 (9th Cir. 1999)...........3

*In re Flash Memory Antitrust Litig.*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009)................................................................4

*In re High-Tech Emp. Antitrust Litig.*,
    856 F. Supp. 2d 1103 (N.D. Cal. 2012)................................................................6

*In re Late Fee & Over-Limit Fee Litig.*,
    528 F. Supp. 2d 953 (N.D. Cal. 2007)..................................................................4

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
    No. C 07-05634 CRB, 2011 WL 1753738 (N.D. Cal. May 9, 2011)...................2

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) .............................................................................2

*Levi Strauss & Co. v. Shilon*,
    121 F.3d 1309 (9th Cir. 1997) ...........................................................................20

iii

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
    985 F. Supp. 949 (C.D. Cal. 1997), *aff'd*, 194 F.3d 980 (9th Cir. 1999) ...........20

*Lucas v. Citizens Commc'ns Co.*,
    244 F. App'x 774 (9th Cir. 2007) .......................................................................12

*Manwin Licensing Int'l S.A.R.L. v. ICM Registry, LLC*,
    No. CV 11-9514 PSG (JCGx), 2012 U.S. Dist. LEXIS 125126
    (C.D. Cal. Aug. 14, 2010) ........................................................................ 9-10, 13

*Mercy-Peninsula Ambulance, Inc. v. San Mateo Cnty.*,
    791 F.2d 755 (9th Cir. 1986) ........................................................................10, 11

*Millennium Labs., Inc. v. Ameritox, Ltd.*,
    No. 12CV1063-MMA (JMA), 2012 U.S. Dist. LEXIS 147528
    (S.D. Cal. Oct. 12, 2012) .......................................................................... 19-20

*Nova Wines, Inc. v. Adler Fels Winery LLC*,
    467 F. Supp. 2d 965 (N.D. Cal. 2006) ..............................................................19

*Official Airline Guides, Inc. v. F. T. C.*,
    630 F.2d 920 (2d Cir. 1980) ..............................................................................12

*Olde Monmouth Stock Transfer Co., Inc. v. Depository Trust &
    Clearing Corp.*, 485 F. Supp. 2d 387 (S.D.N.Y. 2007)......................................12

*POURfect Prods. v. KitchenAid*,
    No. CV-09-2660PHXGMS, 2010 WL 1769413 (D. Ariz. May 3, 2010) ..........12

*SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.*,
    48 F.3d 39 (1st Cir. 1995).................................................................................17

*Sociedad Anonima Vina Santa Rita v. U.S. Dep't of Treasury*,
    193 F. Supp. 2d 6 (D.D.C. 2001)......................................................................21

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*,
    376 F.3d 1065 (11th Cir. 2004) ........................................................................11

*Standardfacts Credit Servs. v. Experian Info. Solutions, Inc.*,
    294 F. App'x 271 (9th Cir. 2008)......................................................................13

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987) ..............................................................................3

iv

*Tate v. Pac. Gas & Elec. Co.*,
  230 F. Supp. 2d 1072 (N.D. Cal. 2002) .............................................................12

*TruePosition, Inc. v. LM Ericsson Tel. Co.*,
  899 F. Supp. 2d 356 (E.D. Pa. Oct. 4, 2012) .......................................................9

*U.S. Info. Sys. v. IBEW Local Union No. 3*,
  No. 00-civ-4763, 2002 U.S. Dist. LEXIS 1038 (S.D.N.Y. Jan. 23, 2002)..........6

*United States v. Aluminum Co. of Am.*,
  148 F.2d 416 (2d Cir. 1945) .............................................................................13

*United States v. Koppers Co., Inc.*,
  652 F.2d 290 (2d Cir. 1981) ...............................................................................2

*United States v. Taubman*,
  297 F.3d 161 (2d Cir. 2002) ...............................................................................3

*Verisign, Inc. v. Internet Corp. For Assigned Names &
  Nos.*, No. CV 04-1292 AHM,
  2004 WL 2095696 (C.D. Cal. Aug. 26, 2004) ....................................................8

*White v. Rockingham Radiologists, Ltd.*,
  820 F.2d 98 (4th Cir. 1987) ..............................................................................12

*Xerox Corp. v. Media Scis. Int'l, Inc.*,
  511 F. Supp. 2d 372 (S.D.N.Y. 2007) .................................................................7

## STATUTES

California Business and Professions Code Section 17200 .....................................23

## OTHER AUTHORITIES

Fed. R. Civ. P.
  Rule 8(a)..............................................................................................................3
  Rule 9(b) ..............................................................................................................6

Plaintiff-Appellant name.space, Inc. ("name.space") respectfully submits this Reply to the Answering Brief of Defendant-Appellee Internet Corporation for Assigned Names and Numbers ("ICANN").  For the reasons set forth below and in name.space's Opening Brief, name.space respectfully requests that this Court reverse the District Court's order dismissing name.space's Complaint.

## ARGUMENT

## I.    NAME.SPACE ADEQUATELY PLEADED A CONSPIRACY CLAIM UNDER SECTION 1 OF THE SHERMAN ACT.[1]

### A.    ICANN Concedes That it Had Sufficient Notice of name.space's Conspiracy Allegations, But Seeks to Hold name.space's Complaint to a Higher Burden of Proof on a Motion to Dismiss.

ICANN's Answering Brief acknowledges that name.space's Complaint specifically identifies "four current and former ICANN Board members" as co-conspirators (Ans. Br. at 18), that the Complaint identifies nine specific ICANN board meetings leading up the 2012 Application Round where the co-conspirators met (*id*. at 19), and that the specifically identified ICANN board members (and former board members) had conflicts of interest due to their connections with and economic interests in companies that compete in the TLD registry market (*id*. at 18, 20).  In other words, ICANN concedes that name.space's Section 1 claims

---

[1] These arguments, and those stated below in Section II, *supra*, apply with equal force to name.space's claims under the Cartwright Act.  "The analysis under California's antitrust law mirrors the analysis under federal law because the Cartwright Act [ ] was modeled after the Sherman Act."  *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) (citations omitted).

provide answers to three of the four basic questions of the conspiracy—the "who," "when," "where," and "why"—that this Court posed in *Kendall* (even though that decision was issued *after* the parties conducted discovery in that case).  *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046-47 (9th Cir. 2008). [2]

Further, although ICANN does not admit it, the remaining question posed in *Kendall*—the "what" of the conspiracy—is clear from the Complaint:  name.space identifies specific rules and policies that governed the 2012 Application Round and describes how each was agreed to in order to set up the application process to benefit the co-conspirators and to harm competition.  (*See* ER 32-33, 38 at ¶¶ 70-73, 76, 97-98.)  Accordingly, by agreeing to create and adopt the various rules and procedures that applied to the 2012 Application Round, the co-conspirators entered into an agreement that is actionable under the antitrust laws.  *See, e.g.*, *United States v. Koppers Co., Inc.*, 652 F.2d 290, 294 (2d Cir. 1981) ("In cases involving behavior such as bid rigging … the Sherman Act will be read as simply saying: 'An agreement among competitors to rig bids is illegal.'").

---

[2] Although ICANN concedes that name.space identified a conspiracy among ICANN, Verisign, and Afilias, ICANN contends that name.space's allegations are inadequate because name.space "fails to identify any individual at Verisign or Afilias." (Ans. Br. at 26.)  But antitrust actions often involve allegations that corporate entities acted as co-conspirators and ICANN cites no authority requiring a plaintiff in an antitrust action to identify *specific* individuals employed by specifically identified corporate co-conspirators to survive a motion to dismiss. *See, e.g.*, *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C 07-05634 CRB, 2011 WL 1753738, at *1 n.3, *13 (N.D. Cal. May 9, 2011) (finding allegations of conspiracy between defendant and non-defendant corporate co-conspirators sufficient under *Twombly*).

2

Having conceded that the Complaint provided ICANN with sufficient notice of name.space's conspiracy allegations under Rule 8(a), ICANN attempts to argue that the Complaint should be held to a higher standard of proof on a motion to dismiss. For example, ICANN cites *In re Citric Acid Litig.*, 996 F. Supp. 951, 953 (N.D. Cal. 1998), *aff'd*, 191 F.3d 1090 (9th Cir. 1999); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 116 (3d Cir. 1999); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987); and *United States v. Taubman*, 297 F.3d 161 (2d Cir. 2002) to challenge the sufficiency of name.space's conspiracy allegations. (Ans. Br. at 19-20, 26). But *In re Citric Acid*, *In re Baby Food*, and *T.W. Elec. Serv., Inc.* were decided at the *summary judgment* stage, and are therefore inapposite here. *See In re Citric Acid Litig.*, 996 F. Supp. at 954; *In re Baby Food Antitrust Litig.*, 166 F.3d at 116; *T.W. Elec. Serv., Inc.*, 809 F.2d at 629-30. *Taubman* is even further afield: that decision involved the appeal of a criminal conviction following a full jury trial. *Taubman*, 297 F.3d at 163.

Contrary to ICANN's argument, however, name.space's claims must satisfy the requirements of Rule 8(a) to survive a motion to dismiss—nothing in *Twombly* has changed that. "Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *GSI Tech., Inc. v. Cypress Semiconductor Corp.*, No. 5:11-cv-03613, 2012 U.S. Dist. LEXIS 93888,

at *7 (N.D. Cal. July 6, 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[A]lthough *Twombly* and *Iqbal* require 'factual amplification [where] needed to render a claim plausible,' . . . *Twombly* and *Iqbal* [do not] require the pleading of specific evidence or extra facts beyond what is needed to make a claim plausible."  *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010) (internal citations omitted); *see also In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1148 (N.D. Cal. 2009) (rejecting argument that plaintiffs must plead "who attended these meetings, what was discussed at them, or how they purportedly related to the conspiracy other than providing an opportunity for the parties to talk to one another" in order to survive motion to dismiss) (citing *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007)).[3]

In sum, what ICANN resists is what ultimately must be proven at summary judgment or trial:  name.space's allegation that ICANN and the co-conspirators structured the 2012 Application Round with the intention of limiting competition

---

[3] The only motion to dismiss case that ICANN cites in this section of its brief is *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007). ICANN does not attempt to draw any factual parallels between the allegations in the Complaint in this case and the allegations in *In re Late Fee*.  Rather, ICANN argues that *In re Late Fee* stands for the proposition that "*Twombly* rejected allegations of motive and opportunity to conspire."  (Ans. Br. at 20-21.)  But *In re Late Fee* does not go that far.  *In re Late Fee* involved claims that financial institutions that were members in the Visa and MasterCard payment networks conspired to set late fees and over limit fees, and the complaint failed to state a claim because it alleged that the defendant banks "at some times during the last decade" imposed similar fee structures.  *Id.* at 961.  By contrast, name.space's Complaint identifies specific meetings where the co-conspirators furthered the conspiracy and identifies the rules and policies of the 2012 Application Round as the by-product of the conspiracy.  (*See* ER 30-31 at ¶ 66; ER 38 at ¶¶ 97-100.)

4

in the TLD registry market and that, as a result of the conspiracy, competition in the TLD registry market has been suppressed or eliminated, consumers have fewer TLDs from which they can choose, prices for registering a TLD are artificially high and there is a thriving—and unnecessary—market for expensive "defensive" registrations.  (*See* ER 38 at ¶¶ 97-100.)  Thus, ICANN simply cannot argue that it did not have "'fair notice of what [name.space's] . . . [Section 1] claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 555.  Reversal is therefore warranted.

### B.     name.space Alleged a Plausible Conspiracy.

ICANN asserts that there is not "any logical reason for ICANN to enter into the alleged conspiracy" because ICANN has exclusive authority to determine who operates in the TLD registry market.  (Ans. Br. at 28.)  But, as demonstrated in name.space's opening brief, there is nothing implausible about name.space's allegations that ICANN and the co-conspirators structured the 2012 Application Round with barriers designed to entrench the power of the dominant players.  (*See* ER 31-32, 38 at ¶¶ 69-71, 97.)  ICANN's exclusive authority over the TLD registry market reinforces the likelihood that individuals with deep ties to companies invested in the outcome of the 2012 Application Round have economic motives to conspire with ICANN to ensure their personal success in the 2012 Application Round at the expense of name.space and other potential market entrants and

5

competition as a whole. *See, e.g.*, *U.S. Info. Sys. v. IBEW Local Union No. 3*, No. 00-civ-4763, 2002 U.S. Dist. LEXIS 1038, at \*17 (S.D.N.Y. Jan. 23, 2002) (finding that "[t]he alleged motive is sufficiently 'economically plausible' to survive the instant motion to dismiss"); *see also In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1120 (N.D. Cal. 2012) (finding conspiracy allegations based in part on overlapping board membership "plausible in light of basic economic principles") (citations omitted); *cf. Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 503 (9th Cir. 2010) (reversing dismissal, in part because "plaintiff has also alleged that ICANN was economically motivated to conspire . . . because VeriSign agreed to share its monopoly profits").[4]

Moreover, ICANN's imposition of significant barriers to entry in the 2012 Application Round can be plausibly explained as an attempt to render name.space's business model obsolete and to maintain the monopoly positions of the co-conspirators in the gTLD, international domain name and defensive registration markets.  (*See* ER 31, 38-39 at ¶¶ 69, 102, 112-113.)  These allegations are more than sufficient to survive a motion to dismiss.  *See, e.g.*, *Black Box Corp. v. Avaya, Inc.*, No. 07-6161, 2008 U.S. Dist. LEXIS 72821, at \*38-39 (D.N.J. Aug. 29, 2008) (denying motion to dismiss where plaintiff alleged that

---

[4] ICANN's citation to *Goldstein v. Bank of Am., N.A.*, No. 1:09-cv-329, 2010 U.S. Dist. LEXIS 28887 (W.D.N.C. Jan. 19, 2010) is inapposite.  The Magistrate Judge in *Goldstein* recommended the dismissal of the plaintiff's attempt to assert a civil conspiracy claim based on an underlying fraud claim that the Magistrate Judge found wanting under Rule 9(b).  *Id*. at \*18-19.

defendant changed policies for anticompetitive reasons to exclude plaintiff and others from the market); *Xerox Corp. v. Media Scis. Int'l, Inc.*, 511 F. Supp. 2d 372, 388-89 (S.D.N.Y. 2007) (denying motion to dismiss where plaintiff alleged that defendant's unjustified product redesign could only be explained as an attempt to exclude plaintiff and other new market entrants); *cf. Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 986 (N.D. Cal. 2010) (denying motion to dismiss where plaintiff alleged that unjustified policy changes excluded plaintiff from the market). ICANN's narrow reading of the Complaint, however, ignores the totality of name.space's allegations and this Court should therefore reverse the District Court's dismissal of name.space's Section 1 claims.

### C.   ICANN Can Be Held Liable Because its "Ultimate Decision-Makers" Participated in the Conspiracy.

As ICANN admits, the Complaint identifies four current or former ICANN board members with vested interests in the outcome of the 2012 Application Round. (ER 29-30 at ¶ 61.) Yet ICANN insists that "there is no allegation that [the four named co-conspirators] enjoyed 'positions of power'" within ICANN and that name.space's Complaint is therefore insufficient. (Ans. Br. at 25 n.4.) But three of the four current and former ICANN board members identified in the Complaint hold, or formerly held, high-ranking positions on ICANN's board: Steve Crocker is the Chair of the ICANN board; Bruce Tonkin is the Vice-Chair of the Board; and Peter Dengate Thrush was the former Chair. (ER 29-30 at ¶ 61.)

7

More importantly—and the critical fact that ICANN ignores—ICANN's Board of Directors is the "ultimate decision-maker" that adopted the policies and procedures that governed the 2012 Application Round.  *See VeriSign, Inc. v. Internet Corp. for Assigned Names & Nos.*, No. CV 04-1292 AHM, 2004 WL 2095696 at *5 (C.D. Cal. Aug. 26, 2004).

In light of these facts, ICANN's attempt to rely on *Verisign* falls flat.  (*See* Ans. Br. at 22-23.)  In *Verisign*, the complaint failed to state a claim because the plaintiff alleged "that certain named competitors have conspired to control *advisory groups* that report to ICANN's ultimate decision-maker, the Board of Directors."  *Verisign*, 2004 WL 2095696, at *5 (emphasis in original).  Here, as ICANN concedes, name.space specifically identified current and former ICANN Board of Directors members—the "ultimate decision-maker(s)" that agreed to structure the 2012 Application Round to unlawfully restrict competition to benefit themselves and the private companies at which they held prominent positions.

Thus, as name.space demonstrated in its opening brief, these allegations are sufficient to state a conspiracy claim under the Supreme Court's decision in *Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982).  The Complaint identifies specific current and former ICANN board members— including the current and former Chairs of ICANN's board—and alleges that these "ultimate decision-makers" at ICANN were acting in their own self-interest, not in

8

furtherance of their obligations to ICANN.  (ER 28, 29-30 at ¶¶ 61, 61 and 65.)

Those individuals acted both as agents of ICANN—a private, standard-setting

body (*see ICANN Transparency*, 611 F.3d at 507)—and on behalf of companies

whose interests they represented, such as Afilias and Verisign, which have vested

economic interests in the outcome of the 2012 Application Round. (ER 26-27, 29-

30 and 37 at ¶¶ 44, 61 and 95.)  These allegations are sufficient to state a claim for

relief and reversal is therefore appropriate.  *See TruePosition, Inc. v. LM Ericsson

Tel. Co.*, 899 F. Supp. 2d 356, 363-64 (E.D. Pa. 2012) (denying motion to dismiss

where plaintiff alleged "that there was coordinated action between employees of

the [co-conspirators] among themselves and acting as agents of [the standard-

setting body]" and that agents "manipulate[d] [the body's] standardization process

for their alleged unlawful conspiratorial objective").[5]

## II.    NAME.SPACE ADEQUATELY PLEADED A MONOPOLIZATION CLAIM UNDER SECTION 2 OF THE SHERMAN ACT.

Judge Gutierrez recently held that because "ICANN's activities play an

important role in the commerce of the Internet and ICANN's actions could exert a

restraint on that commerce [. . .] ICANN may be held liable under the Sherman

Act."  *Manwin Licensing Int'l S.A.R.L. v. ICM Registry, LLC*, No. CV 11-9514

---

[5] ICANN asserts that "*Hydrolevel* . . . illustrates the sort of control that must exist to ***state*** a conspiracy claim."  (Ans. Br. at 23 (emphasis added).)  But *Hydrolevel* was decided after discovery and a trial.  *See* 456 U.S. at 564.  ICANN cannot impose on a motion to dismiss the same burden of proof as required to ultimately prevail at trial, as was the case in *Hydrolevel*.

9

PSG (JCGx), 2012 U.S. Dist. LEXIS 125126, at *15-18 (C.D. Cal. Aug. 14, 2012) (denying ICANN's motion to dismiss claims under Section 1 and Section 2 of the Sherman Act). Yet ICANN maintains in this case that it cannot be held liable under Section 2 of the Sherman Act because (1) ICANN does not compete in the TLD registry market (*see* Ans. Br. at 31); (2) ICANN has not engaged in any exclusionary conduct (*see* Ans. Br. at 36); and (3) name.space has not alleged Section 2 claims with respect to the international market for domain names or the defensive registration market. (Ans. Br. at 34-35). ICANN's arguments are without merit.

### A. ICANN Competes in the Relevant Markets.

ICANN first argues that it does not compete in the relevant markets and that any "influence" it may have on the market is insufficient to create liability under Section 2. (Ans. Br. at 31-33.) This argument, however, ignores the well-pleaded factual allegations of the Complaint, ICANN's own admissions, and fundamental reality.

In support of its argument that it does not compete in the market, ICANN primarily relies on *Mercy-Peninsula Ambulance, Inc. v. San Mateo Cnty.*, 791 F.2d 755 (9th Cir. 1986). That case, however, mainly deals with the question of whether decisions made by a California county to select paramedic providers pursuant to California law are immune from challenges under the federal antitrust

laws. *See id.* at 759. Here, ICANN is explicitly not immune to the antitrust laws. (*See* ER 26 at ¶ 38.) Further, *Mercy-Peninsula* offers a brief Section 2 analysis, holding only that the county, which selected paramedic providers through a competitive bidding process pursuant to California law, was not a competitor in the health care provision market. 791 F.2d at 759. By contrast, as the Complaint alleges, ICANN controls all potential gTLDs. (ER 33 at ¶ 78.) And ICANN's argument that it is currently charging a monopoly price in fact concedes that it is actually in the market, charging that price, unfettered by competition. (Ans. Br. at 38.) In sum, there can be no competition in the market for gTLDs with access to the DNS unless and until ICANN determines to do something with the control it has. In ICANN's own terminology, its decision to transfer its market position to some other entity (which, because of ICANN's participation in the Section 1 conspiracy and conspiracy to monopolize, has inevitably turned out to be participants in the conspiracy) is termed a "delegation." In other words, ICANN is "delegating" its monopoly position to another entity. By any interpretation, then, ICANN is in the market for gTLDs with access to the DNS.[6]

---

[6] The cases that ICANN cites for this proposition are also factually distinguishable. *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir. 1996) (defendant purchaser was not in competition with plaintiff supplier); *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1075 (11th Cir. 2004) (defendant that did not participate in the market could not be liable for partially-owned subsidiary that did). And ICANN again attempts to rely on non-motion to dismiss cases in this section of its Answering Brief. *See Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 603 F. Supp. 1077, 1079 (S.D. Ind. 1985) (denying preliminary injunction, after developing a full factual record) , *aff'd*, 784 F.2d 1325 (7th Cir.

Similarly unavailing is ICANN's argument that it cannot be liable under Section 2 because it merely "influences" the market through the selection of TLD registry operators.  (Ans. Br. at 33.)  As argued above, ICANN does far more than "influence" the gTLD registry market—it completely controls access to the DNS.[7]  Further, ICANN is not shielded from Section 2 liability simply because it does not operate TLD registries.  ICANN can be held liable because the delegation process that ICANN controls reflects and constitutes the unlawful conspiracies and exclusionary conduct described in the Complaint, which had the ultimate effect of protecting gTLDs from market competition.  For example, in *Tate v. Pac. Gas & Elec. Co.*, 230 F. Supp. 2d 1072, 1078-79 (N.D. Cal. 2002), the court noted that it did not matter that the defendant was not actually actively selling its product—as the Court noted, "[t]hat is actually plaintiffs' point."  Instead, the defendant was maintaining its monopoly position by excluding plaintiff from the market.  *See id.*

---

1986); *White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 101 (4th Cir. 1987) (summary judgment); *Lucas v. Citizens Commc'ns Co.*, 244 F. App'x 774 (9th Cir. 2007) (summary judgment).

[7] The cases ICANN cites in support of its "influence" argument are distinguishable.  *See Olde Monmouth Stock Transfer Co., Inc. v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 392 (S.D.N.Y. 2007) (allegations that defendant in another market had influence "from its monopoly position in the closely related . . . industry"); *Official Airline Guides, Inc. v. F.T.C.*, 630 F.2d 920, 925 (2d Cir. 1980) (FTC enforcement action following investigation of monopolist publisher of flight schedules that did not publish commuter air carrier schedules); *POURfect Prods. v. KitchenAid*, CV-09-2660PHXGMS, 2010 WL 1769413 (D. Ariz. May 3, 2010) (no allegations that defendant had dominant share of the market or that there were barriers to entry).

12

(finding that defendant is "frustrating the ability of downstream competitors in [its] captive region physically to access the gas").

Finally, whether ICANN's bylaws prohibit it from competing with TLD registries is irrelevant, especially at this stage of the litigation. At most, ICANN identifies only the existence of such a policy; ICANN's actual market behavior is a question for a later stage. *See Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1061 (C.D. Cal. 2012) (taking judicial notice of documents, but not "for the truth of the matters they assert").

## B. ICANN Engaged in Unlawful Exclusionary Conduct to Maintain its Monopoly Power.

In its Answering Brief, ICANN repeats the District Court's incorrect conclusion that ICANN cannot be held liable under Section 2 of the Sherman Act because ICANN's monopoly was "thrust upon" it. (Ans. Br. at 37.) But ICANN, like the District Court, ignores that agreements between ICANN and the U.S. government specifically provide that ICANN is not immune from antitrust liability. (ER 26 at ¶ 38.)[8] *See also Manwin*, 2012 U.S. Dist. LEXIS 125126, at *15-18.

---

[8] Again, most of the cases on which ICANN relies were not decided on a motion to dismiss. *See United States v. Aluminum Co. of Am.*, 148 F.2d 416, 421 (2d Cir. 1945) (appeal after trial where "more than 40,000 pages of testimony had been taken"); *Alaska Airlines Inc. v. United Airlines, Inc.*, 948 F.2d 536, 539, 548 (9th Cir. 1991) (appeal of summary judgment). The other cases cited by ICANN are inapposite and distinguishable from this action. *See Credit Chequers Info Servs. v. CBA, Inc.*, No. 98 Civ. 3868, 1999 U.S. Dist. LEXIS 6084, at *36-38 (S.D.N.Y. Apr. 28, 1999) (granting motion to dismiss in part because plaintiff failed to plead unlawful maintenance of monopoly power and consumer demand created defendant's monopoly power), *aff'd*, 205 F.3d 1322 (2d Cir. 2000); *Standardfacts Credit Servs. v. Experian Info. Solutions, Inc.*, 294 F. App'x 271, 272 (9th Cir.

And, contrary to ICANN's assertion that it has only engaged in "conduct that was specifically authorized by the U.S. government" (Ans. Br. at 37), the Complaint specifically alleges how ICANN engaged in exclusionary conduct that is antithetical to the agreements in force between ICANN and the U.S. government. For example, the U.S. government's mandate that ICANN's "activities . . . need to be open to all persons who are directly affected by the entity, with *no undue financial barriers to participation* or *unreasonable restrictions on participation*" (ER 26 at ¶ 41(emphasis added)) does not countenance an unjustified, unexplained almost three fold price increase to the application fee for a *single* TLD in the 2012 Application Round.  (ER 31 at ¶ 67.)

Further, ICANN's claim that it "can charge whatever price it wants without violating the antitrust laws" is unavailing in light of the facts pled in the Complaint that demonstrate that it is ICANN's exclusionary conduct that maintains ICANN's power to do so, rather than market forces.  (Ans. Br. at 38.)  As the Complaint states, ICANN has sought to protect its ability to "charge whatever price it wants" through exclusionary conduct.  For example, ICANN set the 2012 Application fee at or above the actual cost of bringing a TLD registry to the market.  (ER 32 at ¶ 74.)  Absent ICANN's exclusionary conduct, competition would restrict the price

2008) (finding that defendants had "no direct control" over source of monopoly power).

14

that ICANN would be able to charge—a limitation imposed by market reality rather than a monopolist's fiat.

Moreover, as name.space demonstrates in its Opening Brief, both ICANN's and the District Court's narrow focus on the price of participating in the 2012 Application Round fails to consider that ICANN imposed a threefold price increase to the application fee while at the same time limiting applicants to apply for one TLD per application and imposing other barriers to entry such as a binding dispute resolution process.  (*See* Op. Br. at 30-31.)

Ultimately, ICANN and the District Court miss the point of name.space's allegations:  that ICANN has unreasonably denied name.space and other potential TLD registries access to the DNS in an effort to *maintain* its own monopoly power in the relevant markets and the monopoly power of its current and former board members in those markets.  (ER 33-34, 39-40 at ¶¶ 77-80, 107-114; Op. Br. at 32-33.)  Accordingly, the Court should reverse the District Court's dismissal of name.space's Section 2 claims.

### C.    ICANN Failed to Move to Dismiss name.space's Section 2 Claims With Respect to Two Distinct Markets.

Finally, reversal is warranted because the District Court dismissed without explanation name.space's Section 2 claims with respect to the market for domain names and the market for blocking or defensive registration services, even though ICANN failed to move to dismiss these claims.  (*See* Op. Br. at 34.)  In response,

15

ICANN argues that "name.space made a passing reference" to these markets in the Complaint, which somehow excuses ICANN's failure to move to dismiss name.space's claims.  (Ans. Br. at 34.)  ICANN's argument is illogical, ignores the allegations of the Complaint, and misstates the appropriate legal standards.

In the section of the Complaint that articulates name.space's claims under Section 2, name.space specifically states that "ICANN uses its control over access to the Root in order to eliminate competition from the relevant markets."  (ER 39 at ¶ 112.)  And the Complaint provides detailed descriptions of the "relevant markets" in a preceding section, including the market for domain names and the market for blocking or defensive registration services.  (ER 33-35 at ¶¶ 77-80.)  Accordingly, the Complaint clearly asserts Section 2 claims with respect to these markets.[9]

ICANN also argues that name.space lacks standing to state a claim in these markets, primarily relying on *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367 (9th Cir. 2003).  (Ans. Br. at 35.)  But *Glen Holly* does not support ICANN's argument.  In that case, the Ninth Circuit *reversed* the dismissal of the plaintiff's antitrust claims, reasoning that "[g]iven that customers are the intended beneficiaries of competition, and that customers are presumptively those injured by

---

[9] Like almost all complaints, name.space's Complaint "realleges and incorporates by reference" all of the facts set forth in the Complaint, thereby making the descriptions of the relevant markets (ER 33-35 at ¶¶ 77-80) applicable to the claim for relief under Section 2 that ICANN "eliminate[s] competition from the relevant markets."  (ER 39 at ¶ 112.)

its unlawful elimination, for pleading purposes we conclude that [plaintiff] has satisfied the requirement that it adequately allege antitrust injury to its business." 352 F.3d at 378.  That is exactly what name.space alleges here—that by exercising its monopoly control over the Root to eliminate competition and exclude name.space from the market, consumers have been harmed because they have fewer "expressive" choices in the international market for domain names and because content creators must spend significant resources "defensively" registering their brands with multiple TLDs.  (*See* ER 33-35 at ¶¶ 77-80.)[10]

Thus, ICANN's failure to move to dismiss name.space's valid Section 2 claims with respect to the domain name market and the defensive registration market—and the District Court's unexplained dismissal of these claims—warrants reversal.

## III. NAME.SPACE PLEADED THAT ICANN'S EXCLUSIONARY CONDUCT CAUSED AN ANTITRUST INJURY.

ICANN seizes on the District Court's erroneous finding that "many entities" participated in the 2012 Application Round.  (Ans. Br. at 39-40.)  But, as name.space demonstrated in its Opening Brief, the District Court's finding both ignores the allegations in name.space's Complaint and impermissibly makes a

---

[10] ICANN's other cases are distinguishable.  *See SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.*, 48 F.3d 39, 44 (1st Cir. 1995) (plaintiff supplier brought antitrust claims against customer based on customer's breach of supply agreement); *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 540 (9th Cir. 1987) (tuna fishermen who were employees of fishing vessels that sold the tuna lacked standing to bring antitrust claims against canneries that purchased tuna from the vessels).

17

factual determination on a motion to dismiss.  name.space alleged that the 2012

Application Round was dominated by a select group of industry insiders (ER 33,

38 at ¶¶ 76, 98), and there is not a single allegation in the Complaint to support a

finding that "many entities" participated in the 2012 Application Round.[11]  The

District Court, however, improperly focused on the fact that there were other

applications in the 2012 Application Round, without explaining how a raw number

alone weighs against finding that ICANN restrained trade as a matter of law.  (ER

9-10.)  Further, by conflating the number of *applications* with the number of

*applicants*, and by assuming that those applicants could be treated fairly in the

process, the District Court again made impermissible factual determinations on a

motion to dismiss and ignored name.space's allegations that a few insiders

connected to ICANN dominated and, in fact, controlled the 2012 Application

Round.[12]

---

[11] On appeal, ICANN states that it received over 1,930 applications from "over 700 applicants" in the 2012 Application Round.  (Ans. Br. at 41 n.9.)  But ICANN fails to note that just six firms, five of which have ties to ICANN, accounted for over 75% of the applications submitted in the 2012 Application Round.  Regardless, this factual dispute illustrates that the District Court erred in dismissing name.space's Complaint at the pleading stage.

[12] ICANN's contention that name.space's "real concern is that name.space may face increased competition [and that] name.space's claim of injury is based on its fear that the TLDs it operates in its alternate root zone may have to compete with similar TLDs in the DNS" completely misses the core of name.space's Complaint. (*See* Ans. Br. at 43.)  name.space brought this lawsuit because it is seeking to participate in the market for gTLDs ***with access to the ICANN-controlled DNS*** and that because of ICANN's exclusionary, unlawful conduct, name.space and other potential market entrants have been shut out of the market.

## IV.    NAME.SPACE'S TRADEMARK CLAIMS ARE RIPE BECAUSE ICANN HAS MADE NAME.SPACE'S MARKS AVAILABLE FOR SALE.

ICANN does not deny that it accepted applications, along with $185,000 application fees, for 189 of the TLDs that are currently offered on the name.space network.  (Ans. Br. at 44.)  Nor does ICANN dispute that liability exists under the Lanham Act where a defendant "offer[s] for sale or market[s] products bearing allegedly infringing marks."  (Ans. Br. at 47.)  So ICANN attempts to re-characterize its behavior, arguing that it "merely received applications from others seeking to operate certain TLDs in the DNS" and that "if and when TLDs are delegated, any competition would be between name.space and other TLD registries."  (Ans. Br. at 46.)  ICANN is identifying an *additional but different* trademark claim that name.space may possess, but this does not change the alleged facts:  because ICANN accepted fees in exchange for making name.space's marks available for sale—and made readily apparent to the general public ICANN's belief that name.space's marks were ICANN's to sell—there is an actual, not speculative, likelihood of confusion ripe for review.  *See, e.g.*, *Nova Wines, Inc. v. Adler Fels Winery LLC*, 467 F. Supp. 2d 965, 972, 982 (N.D. Cal. 2006) (enjoining sale of products pursuant to trade dress infringement and unfair competition claims even though accused products had not yet been sold); *Millennium Labs., Inc. v. Ameritox, Ltd.*, No. 12CV1063-MMA (JMA), 2012 U.S. Dist. LEXIS 147528, at

*3 (S.D. Cal. Oct. 12, 2012) (denying motion to dismiss where "Plaintiff alleges that [Defendant] has offered for sale 'confusingly similar reports that copy [Plaintiff's] trade dress'"); *see also Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997) ("Shilon admitted to offering to sell counterfeit Levi's jeans and components.  Such an offer will suffice to create liability under the Lanham Act.").

Further, ICANN's reliance on *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949 (C.D. Cal. 1997), *aff'd*, 194 F.3d 980 (9th Cir. 1999) is misplaced.  *Lockheed* is a summary judgment case and the court made a factual determination that NSI's registration of a domain name in the retail market for domain names, without more, does not give rise to a Lanham Act violation.  *Id.* at 958.  Regardless, the facts in this case are significantly different. In the 2012 Application Round, ICANN accepted applications to "delegate" monopoly power in gTLDs—including those containing name.space's marks—to entities seeking to operate as registries in the wholesale market.  In addition, unlike the ICANN-structured 2012 Application Round, Network Solutions' practice of accepting domain name registrations in its capacity as a registrar (*i.e.* a retailer of second-level domains within a TLD) "[did] not make an independent determination of an applicant's right to use a domain name."  *Id.* at 953.  In other words, NSI remained neutral as to what entities registered domain names; entities simply registered

20

whatever domain name they wanted as long as it was not already taken.  Here, however, ICANN is anything but neutral—ICANN is explicitly selecting which entities operate gTLDs on the DNS in exchange for sizeable application fees.[13]

Similarly deficient are ICANN's arguments that its actions are analogous to a government agency "accepting applications for allegedly infringing drug names, or . . . accepting applications of allegedly infringing business names."  (Ans. Br. at 48.)  The narrow focus on applications implausibly assumes that ICANN accepted applications and did nothing else.  In this case, however, ICANN accepted applications *in order to sell* the right to operate gTLDs, including gTLDs that name.space has used in commerce for almost twenty years.  Thus, ICANN's hypotheticals miss the mark entirely; the issues are for what reasons and why applications are accepted.  Where, as here, applications are accepted with the purpose and effect of selling another company's mark for use in commerce, liability exists under the Lanham Act.[14]

---

[13] ICANN cites another factually and procedurally distinguishable case in this section of its Answering Brief, *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1035 (9th Cir. 2011).  In *GoPets*, this Court upheld the district court's award of summary judgment for the plaintiff under the Lanham Act because defendant "did more than merely register the domain name."  *Id*.

[14] ICANN's reliance on *Sociedad Anonima Vina Santa Rita v. U.S. Dep't of Treasury*, 193 F. Supp. 2d 6 (D.D.C. 2001) is unavailing.  In that case—which was decided on a motion for a preliminary injunction—a Chilean winery selling wine under the brand name "Santa Rita" challenged a Bureau of Alcohol, Tobacco, and Firearms rule that recognized "Santa Rita Hills" as an American viticultural area (ATA).  The court determined plaintiff's claim was not ripe because "any ultimate trademark dispute will turn in large measure on the actual, precise appearance of the allegedly infringing label [with the Santa Rita Hills AVA designation]."  *Id*. at 25.  Here, however, ICANN already created a likelihood of confusion by offering

21

Finally, ICANN, like the District Court, erroneously relies on *Image Online Design, Inc. v. Internet Corp. for Assigned Names & Nos.*, No. CV 12-08968 DDP (JCx), 2013 WL 489899 (C.D. Cal. Feb. 7, 2013). Although ICANN insists that name.space's claims are "similar" to the claims in *Image Online*, ICANN does not make any specific factual comparison between the two cases. Indeed, the allegations in this case are *distinctly different* from the claims in *Image Online*. Unlike this action, the plaintiff in *Image Online* acknowledged that its trademark infringement claims were based on ICANN's *future* intention to delegate plaintiff's mark, stating that "it is 'plausible' that ICANN's intent will be realized." *Id.* at *5. Judge Pregerson therefore dismissed the case on that basis. *Id.* But name.space's claims do not depend on any future conduct. As set forth above and in name.space's opening brief, there is a live controversy right now—and a likelihood of confusion that *already exists*—based on ICANN's acceptance of substantial application fees in exchange for its "willingness to allow competing TLD registries to use the identical gTLDs in commerce on the ICANN-controlled DNS." (ER 41 at ¶ 123.) Thus, name.space's claims are ripe and the District Court's dismissal of name.space's trademark and unfair competition claims should be reversed.

---

name.space's gTLDs for sale. In other words, there is no future action by ICANN on which name.space's infringement claim depends.

## V.     NAME.SPACE'S REMAINING CLAIMS WERE IMPROPERLY DISMISSED.

In addition to its antitrust and trademark claims, name.space asserted causes of action for tortious interference with contract and tortious interference with business relations, as well as a claim for violations of California Business and Professions Code Section 17200. For the reasons set forth in name.space's Opening Brief, and contrary to ICANN's arguments on appeal, the District Court improperly dismissed each of these claims. (*See* Op. Br. at 43-47.) Accordingly, the District Court's dismissal of name.space's tortious interference and Section 17200 claims should be reversed.

## VI.     CONCLUSION

For the foregoing reasons, and those stated in name.space's Opening Brief, the District Court judgment should be reversed.

Dated:  December 20, 2013

MORRISON & FOERSTER LLP

By:   /s/ Michael B. Miller
　　　　　　 Michael B. Miller

MICHAEL B. MILLER
CRAIG B. WHITNEY
ADAM J. HUNT
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 468-8000

Attorneys for Plaintiff-Appellant
NAME.SPACE, INC.

## COMBINED CERTIFICATIONS

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, I hereby certify that I am not aware of any related cases that are currently pending before this Court.

## WORD COUNT AND TYPEFACE CERTIFICATIONS

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, I hereby certify as follows:

1.      This brief complies with the type volume limitation of Rule 32(a)(7)(B) because it contains 6,100 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.


Dated:      December 20, 2013        MORRISON & FOERSTER LLP

By:   /s/ Michael B. Miller
Michael B. Miller
Attorneys for Appellee
NAME.SPACE, INC.

24

ny-1121235

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2013, I electronically filed the foregoing REPLY BRIEF OF APPELLANT NAME.SPACE, INC. with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

All participants in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Pursuant to Ninth Circuit Rule 31-1, paper copies of the foregoing REPLY BRIEF OF APPELLANT NAME.SPACE, INC. will be submitted to the Court at the direction of the Clerk of the Court.


Dated:        December 20, 2013


                                        /s/ Michael B. Miller
                                        Michael B. Miller

25